**William HEAD, Appellee,**

v.

**John COLLOTON and Lloyd J. Filer, Appellants.**

No. 83–241.

Supreme Court of Iowa.

March 28, 1983.

Thomas J. Miller, Atty. Gen., Brent R. Appel, Deputy Atty. Gen., and Howard O. Hagen, Asst. Atty. Gen., for appellants.

Tom Riley, T. Todd Becker and Peter C. Riley of Tom Riley Law Firm, Cedar Rapids, for appellee.

McCORMICK, Justice.

This appeal presents a question concerning the right of access of a member of the general public to a hospital's record of the identity of a potential bone marrow donor. The trial court held that a hospital's record of the tissue typing of a potential donor is not exempt from disclosure under section 68A.7(2) of the Iowa Code (1983), the public records statute. We granted interlocutory review of the court's order. After expedited submission of the appeal, we now hold that the statute requires the record to be kept confidential. Therefore we reverse the trial court.

This case is an equitable action for mandatory injunction, brought pursuant to section 68A.5. Although our review is de novo, we find no dispute concerning the material facts.

Plaintiff William Head is a leukemia victim who is currently undergoing chemotherapy in a Texas clinic. His illness is in relapse, and the prognosis is grim.

The University of Iowa Hospitals and Clinics include a bone marrow transplant unit. That unit maintains a bone marrow transplant registry, listing persons whose blood has been tissue-typed by the hospital. The tissue typing reveals blood antigen characteristics which must be known for determining whether a donor's bone marrow will be a suitable match-up for the bone marrow of a donee. A bone marrow transplant consists of removing bone marrow from a healthy person and infusing it into the body of a patient in the hope it will generate healthy white blood cells. The procedure is experimental between unrelated persons.

Late in 1982, plaintiff phoned the transplant unit and, through a series of conversations with a staff member, learned that the hospital's registry included the name of a woman who might, upon further testing, prove to be a suitable donor to him. Only one in approximately 6,000 persons would have blood with the necessary antigen characteristics.

The tissue typing of the woman, referred to in the record as "Mrs. X," had not been done for reasons of her own health but to determine her suitability as a blood platelet donor to a member of her family who was ill. The hospital subsequently placed her name in its platelet donor registry. Then, when it later established an experimental program involving bone marrow transplants between unrelated persons, the hospital, without Mrs. X's knowledge or consent, placed her name in the bone marrow transplant registry. When the hospital established the new program, its institutional review board approved a procedure for contacting persons listed on the registry to

determine whether they would act as donors. The procedure involved sending a letter informing the person of the program, its nature and goals, and inviting the person's participation in it. If the letter was not answered, a staff member was authorized to telephone the person and ask a series of general questions designed to determine whether the person would volunteer as a donor.

After plaintiff's contact with the bone marrow unit, the unit staff on December 31, 1982, sent Mrs. X the general letter informing her about the program and encouraging her to participate in it. When no response to the letter was received, a staff member telephoned Mrs. X on January 10, 1983, and asked her the series of questions. In responding to those questions, Mrs. X said she was not interested in being a bone marrow donor. When asked if she might ever be interested in being a donor, she said, "Well, if it was for family, yes. Otherwise, no." Despite plaintiff's subsequent request that the hospital make a specific inquiry of Mrs. X in plaintiff's behalf or to disclose her identity to him so he could contact her, the hospital refused to contact her or to disclose her identity to plaintiff. He then brought the present action.

Defendants John Colloton and Lloyd J. Filer are hospital employees with access to the bone marrow transplant registry. Plaintiff asked for a mandatory injunction to require them to disclose the name and identity of the potential donor either to the court or to his attorney. He proposed that the court or counsel then be permitted to write the woman to notify her of plaintiff's need and her possible suitability as a donor, asking her if she would consider being a donor to plaintiff.

After hearing evidence on the issue, the court ordered defendants to send the requested letter. This court sustained defendants' application for interlocutory review and issued a stay of the order.

■ This case involves application of the provisions of chapter 68A, Iowa's public records statute. Under section 68A.1, "public records" include "all records and documents of or belonging to this state . . . ." § 68A.1. Defendants concede that the records of the University of Iowa hospital, a state hospital, are public records within the meaning of this provision. Thus the bone marrow donor registry is a public record. Section 68A.2 provides for public access to all public records "unless some other provision of the Code expressly limits such right or requires such records to be kept confidential."

Defendants contend that the registry is required to be kept confidential pursuant to section 68A.7(2). In material part, section 68A.7 provides:

> The following public records shall be kept confidential, unless otherwise ordered by a court, by the lawful custodian of the records, or by another person duly authorized to release information:

> .  .  .  .  .

> 2. Hospital records and medical records of the condition, diagnosis, care, or treatment of a patient or former patient, including outpatient.

Alternatively defendants seek an injunction against disclosure pursuant to section 68A.8 which provides for such relief when a court finds upon a petition supported by affidavit "that such examination would clearly not be in the public interest and would substantially and irreparably injure any person or persons." In view of our disposition of the appeal, we do not reach defendant's alternative ground.

The court has interpreted provisions of chapter 68A in several prior cases. *See Brown v. Johnston,* 328 N.W.2d 510 (Iowa 1983); *Iowa Civil Rights Commission v. City of Des Moines,* 313 N.W.2d 491 (Iowa 1981); *City of Dubuque v. Telegraph Herald, Inc.,* 297 N.W.2d 523 (Iowa 1980); *Howard v. Des Moines Register & Tribune Co.,* 283 N.W.2d 289 (Iowa 1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980); *Des Moines Register & Tribune Co. v. Osmundson,* 248 N.W.2d 493 (Iowa 1976). Several principles emerge from them.

■ Chapter 68A is Iowa's freedom of information statute. *Osmundson,* 248 N.W.2d at 501. Its purpose is "to open the

doors of government to public scrutiny—to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act." *City of Des Moines,* 313 N.W.2d at 495. The act establishes a liberal policy of access from which departures are to be made only in discrete circumstances. *City of Dubuque,* 297 N.W.2d at 526. The specific exemptions in section 68A.7 are to be construed narrowly. *Id.* at 527. Section 68A.8 provides an independent procedure for injunctive relief against disclosure in a carefully circumscribed area. *Id.* at 528.

■ Because chapter 68A defines the right of the general public to access to public records, the exemptions in section 68A.7 delineate exceptions only to the same general right. For example, they do not preclude access by an agency vested with investigative authority and subpoena power. *See City of Des Moines,* 313 N.W.2d at 495. Nor do they preclude access by a public officer granted subpoena authority pursuant to statute or rule. *See Brown,* 328 N.W.2d at 512. In the present case, however, plaintiff has no standing to seek access other than as a member of the public generally.

He contends section 68A.7(2) is inapplicable on two bases. One is that a hospital record is not confidential unless it is a patient record. The other basis is that the tissue-typing record of Mrs. X is not a patient record. Defendants also offer a two-pronged argument. One prong is that a hospital record need not be a patient record to be confidential. The other is that the tissue-typing record is a hospital record of a patient within the meaning of the statute. We are thus confronted with a legal issue, requiring interpretation of section 68A.7(2).

Both sides quote language from *Howard,* 283 N.W.2d at 300, where a plurality of the court held that documents in the working files of the Governor's office were not confidential under section 68A.7(2) even though they contained information about the sterilization of a nursing home patient. The opinion said:

Section 68A.7(2) which exempts "hospital records" and "medical records" of a "patient or former patient, including outpatient," does not apply because the documents here were neither compiled for diagnostic or treatment purposes by hospital or medical personnel nor maintained as records of a hospital or physician.

Each side in the present case purports to find support for its position in this language. Plaintiff argues the opinion makes it clear a hospital record is not confidential unless it is a record of patient diagnosis and treatment. Defendants argue the opinion shows that the modifying language relating to patient care and treatment applies only to the term "medical records." Defendants assert that all hospital records are confidential whether they are patient records or not. This issue was neither presented nor decided in *Howard.* The language in the plurality opinion merely finds that the records were not patient records nor were they hospital or medical records. The court did not decide whether if they were hospital records they would also have to be patient records to be confidential.

■ We must now decide the issue that was unresolved in *Howard.* We agree with plaintiff that the only hospital records made confidential by the statute are those "of the condition, diagnosis, care, or treatment of a patient or former patient, including outpatient." Four considerations influence this interpretation. One is our duty to give the exemption a narrow interpretation. Limiting the kind of hospital records subject to the exemption gives effect to this duty. Another consideration is the use of the word "outpatient" in the qualifying language. The term ordinarily means a person treated at a clinic or dispensary connected with a hospital who is not a hospital inmate. *See* Webster's Third New International Dictionary 1603 (1976). Use of this word would be superfluous in section 68A.7(2) unless the qualifying language modifies the term "hospital records" as well as "medical records." A third consideration is that in both ordinary and professional usage the term hospital record means the hospital's medical record relating to a patient. *See* E.

Hayt and J. Hayt, Legal Aspects of Medical Records 1–35 (1964). A final consideration is the unlikelihood that the legislature intended to create a blanket exemption to all records of a public hospital, whether they relate to patients or not. Accordingly we conclude that the only hospital records made confidential by section 68A.7(2) are those "of the condition, diagnosis, care, or treatment of a patient or former patient, including outpatient."

We must next determine whether the record to which plaintiff seeks access is that kind of hospital record. In contending Mrs. X was not a patient, plaintiff relies on cases interpreting the physician-patient privilege in section 622.10. *See, e.g., State v. Bedel,* 193 N.W.2d 121 (Iowa 1971). Section 622.10 concerns only the circumstances under which certain persons including physicians are precluded from disclosing confidential communications in giving testimony. This court has said:

> The physician-patient privilege is intended to foster free and full communication between the physician and the patient in diagnosis or treatment of the patient's ills. This privilege is not designed, nor will it be so extended, to act as a shield behind which a patient may conceal information, though made to his physician, which is not necessary and proper to enable the physician to perform his profession skillfully.

*Bedel,* 193 N.W.2d at 124.

The present case does not involve an issue of testimonial privilege under section 622.10. That provision has a unique and limited purpose. Because it is in derogation of every person's duty to give evidence, it is subject to special restrictions. *See, generally, Lamberto v. Bown,* 326 N.W.2d 305, 306–07 (Iowa 1982). Those special restrictions do not necessarily apply in the context of chapter 68A. As recognized in *City of Des Moines,* the exemptions in section 68A.7 are "applicable only within the framework of 'every citizen's' *general* right to examine public records under chapter 68A." 313 N.W.2d at 495 (emphasis in original). Section 622.10 provides a situation like those recognized in *City of Des Moines* and *Brown* where a statute or rule independently controls disclosure of information for a special and limited purpose. When such statutes or rules apply, the effect is to give a particular party a different right of access to information from that of the public generally. In contrast, the present case depends on plaintiff's right of access under chapter 68A as a member of the general public. Because the privilege under section 622.10 impinges upon a litigant's right to present evidence, it is not coextensive with the confidentiality requirement of section 68A.7(2). Therefore the cases interpreting section 622.10 are not controlling.

The critical issue is whether Mrs. X was a hospital patient for purposes of section 68A.7(2) when she submitted to tissue typing as a potential platelet donor. The ordinary meaning of the word "patient" is "a person under medical or surgical treatment." *See Travelers' Insurance Co. of Hartford v. Bergeron,* 25 F.2d 680, 683 (8th Cir.), *cert. denied,* 278 U.S. 638, 49 S.Ct. 33, 73 L.Ed. 553 (1928). The word "treatment" is broad enough to embrace all steps in applying medical arts to a person. *See* Webster's Third International Dictionary 2435 (1976) ("treat"—"to care for (as a patient or part of the body) medically or surgically: deal with by medical or surgical means....") ("treatment"—"the action or manner of treating a patient medically or surgically....").

The evidence shows the hospital believed Mrs. X became a patient when she submitted to tissue typing. Dr. Roger Gingrich, director of the hospital's bone marrow transplant program, testified she was a patient. He said: "I would regard any person who interfaces themselves with the medical profession and out of that interaction there's biologic information obtained about the ... person, in fact to be a patient, to [have] established a doctor-patient relationship." Dr. James Armitage, former director of the unit, testified to the same

effect. Although this testimony is not conclusive on the issue, it is consistent with the broad dictionary definition of the treatment concept.

It is also consistent with caselaw that recognizes the same duty between physician and donor as exists between physician and patient generally. *See, e.g., Fleming v. Michigan Mutual Liability Co.,* 363 F.2d 186 (5th Cir.1966); *Bonner v. Moran,* 75 App. D.C. 156, 126 F.2d 121 (1941); *Smith v. Hospital Authority of Walker, Dade, and Catoosa Counties,* 160 Ga.App. 387, 287 S.E.2d 99 (1981). In the *Smith* case the court said the relationship is the same: "Once a [blood] donor is accepted (medical reasons rule out some donors) his person is unquestionably placed under the control of the hospital personnel operating the laboratory, and he must rely on their professional skills as in any other hospital-patient relationship." *Id.* at 389–90, 287 S.E.2d at 101–02.

Perhaps even more importantly the doctors' testimony is consistent with the reality of the situation. When a person submits to a hospital procedure, the hospital's duty should not depend on whether the procedure is for that person's benefit or the potential benefit of someone else. The fiduciary relationship is the same, and the standard of care is the same. In addition, just as with patients generally, a potential donor has a valuable right of privacy.

■■■■ An individual's interest in avoiding disclosure of personal matters is constitutionally based. *See Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64, 73 (1977); *Brown,* 328 N.W.2d at 512. This right is also recognized at common law. *See Winegard v. Larsen,* 260 N.W.2d 816 (Iowa 1977). A valuable part of the right of privacy is the right to avoid publicity concerning private facts. *See Howard,* 283 N.W.2d at 301–302. This right can be as important to a potential donor as to a person in ill health. The Hippocratic Oath makes no distinction based on how

medical confidences are acquired. *See Horne v. Patton,* 291 Ala. 701, 708, 287 So.2d 824, 829 (1973). Nor does the American Medical Record Association make such a distinction in its model policy for maintenance of confidentiality of patient health information adopted in 1977. *See* 26 *Medical Trial Technique Quarterly* 195 (Fall 1979).

■■■ The conclusion that a potential donor is a patient and should have the privacy rights of a patient is merely reenforced by the testimony in the present record concerning the possible chilling effect of disclosure upon medical research. That evidence is not determinative of the issue.

We conclude that the hospital record of Mrs. X is the hospital record of the "condition, diagnosis, care or treatment of a patient, or former patient" within the meaning of section 68A.7(2). Therefore the record is confidential.

■■■ Plaintiff contends this does not necessarily decide the case. He points to the provision in the first paragraph of section 68A.7 that provides for confidentiality "unless otherwise ordered by a court." He argues that this provision gives a court discretion to breach confidentiality otherwise required under the statute. We do not read the provision in that way nor do we understand that the trial court did so. To do so would undermine the careful legislative delineation of statutory exemptions. We hold, instead, that the power of a court is limited to ordering disclosure of otherwise confidential records only when a statute or rule outside of chapter 68A gives a party a specific right of access superior to that of the public generally. Situations of that kind were presented and found to exist in the *City of Des Moines* and *Brown* cases.

■■■ Finally, plaintiff contends it is significant that the remedy he sought and the trial court awarded fell short of disclosure of Mrs. X's identity. He suggests the interests of the parties under chapter 68A are

satisfied by this remedy. We find, instead, that the remedy the trial court fashioned was not authorized by the statute. If public access is available at all under chapter 68A, it is right of general public access. The statute does not permit the singling out of one member of the public for special access on special terms.

We have carefully considered all of plaintiff's contentions and arguments, whether expressly addressed in this opinion or not, and find they are without merit. The trial court order must be reversed.

REVERSED.

All Justices concur except WOLLE, J., who takes no part.