*787 OPINION OF THE COURT
Lawrence E. Kahn, J.
The above-captioned litigation involves an investigation by the Department of Health (Department) relative to allegations of professional misconduct by a treating psychiatrist. In connection with its investigation, and purportedly pursuant to statutory authority found in Public Health Law § 230, the State Board for Professional Medical Conduct (Board) within the Department issued subpoenas to a psychiatrist and a psychologist, who have subsequently treated the patient alleged to be the victim of the former purported professional misconduct. Neither the subsequent treating psychiatrist nor the subsequent treating psychologist are the subject of any complaint, investigation or alleged wrongdoing in relation to the initial complaint.
The patient who is the purported victim (Patient A), has been granted permission to intervene in these proceedings. Her affidavit indicates that she did not initiate the underlying complaint which triggered the investigation. She strenuously objects to any disclosure of her patient records. Thus, the court has before it subpoenas for the entire files of two separate health care professionals, neither of whom are under investigation, for records of a patient who has filed no charges, and who objects to the disclosure of her files.
The court has made an in camera inspection of submissions by the Board in relation to both subpoenas, as well as the affidavit of Patient A. The two persons whose records have been subpoenaed are Dr. John Sarris, M.D., and Katherine F. Wardle, PhD. Dr. Sarris has moved for an order quashing the subpoena served on him. The defendant has cross-moved to compel compliance. With respect to Dr. Wardle’s subpoena, the Department has moved to compel compliance. Both Dr. Wardle and Patient A have submitted affidavits in opposition.
The Board derives its investigatory powers from Public Health Law § 230 (10) (a), which provides in pertinent part that the Board "shall be authorized to conduct a comprehensive review of patient records and office records of the licensee.” (Emphasis supplied.) Paragraph (k) provides for the Board’s subpoena power. It states in pertinent part that "the board shall have the power to issue subpoenas requiring persons to appear before the board and be examined with reference to a matter within the scope of the inquiry or investigation being conducted by the board and produce books, *788 papers, records or documents pertaining thereto.” Paragraph (l) provides that the Board "may examine and obtain records of patients in any investigation or proceeding by the board acting within the scope of its authorization.”
"It is ancient law that no agency of government may conduct an unlimited and general inquisition into the affairs of persons within its jurisdiction solely on the prospect of possible violations of law being discovered, especially with respect to subpoenas duces tecum * * * There must be authority, relevancy, and some basis for inquisitorial action” (Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 23 NY2d 916, 918). Thus, to require compliance, the Board’s burden is threefold. Its authority must be found in its statutory mandate. Relevancy and basis must be found in the submissions presently before this court, including those submitted in camera.
Initially, and contrary to the assertions of Patient A and Dr. Wardle, neither the doctor-patient nor the psychologist-patient privileges contained in CPLR article 45 act as an absolute bar. "[IJmplied authorization is given the State Board to obtain patient records for purposes of investigation of a physician notwithstanding the confidential physician-patient relationship”. (Matter of Levin v Murawski, 59 NY2d 35, 40.) As aforesaid, the enabling statute extends this authority to the patient and office records of the actual licensee under investigation. However, whether this authorization extends to the patient and office records of a subsequent treating physician or psychologist is a much closer question. In such instances, the issues of relevancy and basis become much more pronounced. Particularly where the patient objects, any analysis must balance the patient’s right to further confidential relationships with a treating psychiatrist or psychologist. Especially when the complaint is filed by a third party, an investigation should not operate to deprive an innocent party from the statutorily guaranteed confidentiality of his or her treatment with the person of his or her choice. In such instances, the burden upon the Board becomes increasingly manifest.
In reviewing the in camera submissions, it is apparent that the attempts to subpoena the office records of Doctors Wardle and Sarris are not critical to the Board’s investigation of professional misconduct in this instance. The allegation of misconduct is remote to the subsequent treatments. No relationship has been established between the records sought and the allegations which formed the basis for the initial investí *789 gation. Indeed, the "basis for inquisitorial action” includes no allegations which remotely would involve the records sought. The alleged professional misconduct occurred long before Patient A sought treatment from either Dr. Sarris or Dr. Wardle. The Board has not established any relevancy other than what must be categorized as a fishing expedition in an attempt to possibly link these treatments to some undesignated and ill-defined continuing breach of professional ethics, the relevancy of which is suspect at best. When balanced against Patient A’s right to continued, confidential communications with the treating professional of her choice, the subpoenas must fail.
The motion for an order quashing the judicial subpoena duces tecum issued to Dr. Sarris shall be granted. The cross motion to compel compliance with said subpoena shall be denied. The motion to compel compliance with the nonjudicial subpoena issued to Dr. Wardle shall be denied.