OPINION OF THE COURT
A. Gail Prudenti, J.
The defendant has made an application for an order which, *661 inter alla, would direct the plaintiff, a registered psychologist, to produce his original appointment books as well as the identities of his patients who paid for plaintiff’s services in cash. In the alternative, the defendant seeks an order which would preclude the plaintiff from offering "any” evidence at trial concerning his finances. In response, the plaintiff vigorously opposes the application and has submitted a cross motion directed toward a downward modification of certain of his pendente lite financial obligations; additionally, the cross motion seeks a court order which would authorize the plaintiff to "handle and manage the sale” of a cooperative apartment owned by the parties.
These motions and cross motions are decided as follows:
The application for the plaintiff’s appointment books is largely based upon certain matters which were disclosed and demanded during his deposition. Essentially, the transcript of that proceeding indicates that the plaintiff’s practice was to delete or erase patients’ names from his appointment book when they paid cash and that this cash, approximating $2,000 to $3,000 per year, was not reported to the Government. After this information was disclosed, counsel for the defendant made an oral demand for the names of those patients who paid in cash as well as the original appointment book so that it could be examined by an expert, apparently to determine "the number of times [the defendant] writes in someone’s name and later deletes it, erases it.” These demands were denied by counsel for the plaintiff and the instant motion followed.
Beyond peradventure, the parties to a matrimonial proceeding are entitled to a "searching exploration” directed towards having the "entire financial history of the marriage * * * open for inspection by both parties.” (Ahern v Ahern, 94 AD2d 53, 56 [2d Dept 1983].) While there is, to a degree, a somewhat free rein in the discovery phase of the action, neither spouse is offered unbridled discretion and must defer to certain considerations, including bona fide claims of privilege. (See, e.g., Lehman v Lehman, 94 AD2d 761 [2d Dept 1983].) Moreover, even at a deposition with its somewhat relaxed rules of evidence (CPLR 3115), the protections surrounding privileged matter are available. (CPLR 3101 [b].)
With respect to the matter at bar, the claimed privilege is that of psychologist-client. Although its codification (CPLR 4507) analogizes it to that enjoyed by the attorney and client, *662 case law has established that the privilege is broader than that spawned by a physician and patient. (People v Wilkins, 65 NY2d 172 [1985].)
Additionally, there is some authority for the proposition that the identity of a psychologist’s patient is privileged and should be kept confidential. Indeed, in Silvan v Silvan (93 AD2d 790 [1st Dept 1983]), the court implied such a privilege when it opined that "Because the patients are entitled to confidentiality, an order should be settled which will allow the wife access to the records while at the same time protecting the confidentiality of the patients’ identities.” (Emphasis supplied.)
While counsel for the defendant in the matter at bar claims that Silvan (supra) was postjudgment and therefore not instructional as to the matter at bar, the court finds that distinction to be without merit. Similarly, on the Federal level, there is support for a finding that the patient’s name be protected. (Lora v Board of Educ., 74 FRD 565 [ED NY 1977].)
Moreover, and as aptly found in Scull v Superior Ct. (206 Cal App 3d 784, 790, 254 Cal Rptr 24, 26 [2d Dist 1988]), a case provided by the plaintiff, "confidentiality is the essential ingredient for successful psychotherapy.” Regrettably, but as was recognized by the Scull panel, our society tends to place a stigma upon mental disease and knowledge of such treatment "reveals the existence and, in a general sense, the nature of the malady.” (206 Cal App 3d, at 790, 254 Cal Rptr, at 27.) It is, therefore, the determination of this court that the identities of the plaintiff’s patients are privileged and confidential.[1] This determination does not, however, end the analysis.
The remaining issue is the tension between this defendant’s rights to disclosure of financial information and the plaintiff’s patients’ rights to confidentiality. In this regard, and in the absence of authority to the contrary, the court is convinced *663 that the competition between these interests and their underlying concepts can only be resolved by a balancing of certain considerations.
With respect to the patients, the law has recognized that they have a right to a confidential relationship with a psychiatrist or psychologist, especially when they are innocent, nonparticipants in the lawsuit. (Matter of A-85-04-38, 138 Misc 2d 786 [Sup Ct, Albany County 1988].)[2] Moreover, concern has also been expressed that the confidentiality which is necessary for certain relationships will be chilled if the parties anticipate that the courts will subsequently (and without invitation) intrude upon the relationship and override the privilege in favor of some other consideration. (Yaron v Yaron, 83 Misc 2d 276 [Sup Ct, NY County 1975].)
Focusing now upon this defendant’s position, surely she has the right to have her husband’s finances placed before the court so that both parties may receive an equitable result. Additionally, her application is based upon the plaintiff’s sworn admissions; this is no "fishing expedition”. However, the court also notes that her instant demand seeks her husband’s appointment book (which contains the names of his patients who did not pay by cash) as well as the names of those patients who did pay by cash (and were therefore removed from the book).[3] This is the universe of his patients. Conversely, her alternative — that he be precluded from offering "any” evidence — is equally drastic.
Upon balancing these and other considerations, including the rights of the parties, the plaintiff’s patients, and the expectations of other existing and would-be patients of this and other mental health professionals, the court finds that the injury that would result to the relation which the privilege seeks to foster and protect would be greater than the benefit it would gain for the "correct disposition of the litigation.” (See, e.g., Perry v Fiumano, 61 AD2d 512 [4th Dept 1978].)
In reaching this determination, the court notes that the plaintiff’s otherwise unimpeached testimony has, at least facially, established that he receives cash and, to a degree, in *664 what amounts. The court is confident that those admissions, coupled with other devices (for example, imputed income or the experiences of the wife or other witnesses during the marriage) will adequately develop the plaintiff's financial picture.
Lastly, the court also notes that while neither party has offered any authority for the demanded relief, they have also failed to offer any alternative or compromise solution to this dispute. Indeed, while the court would readily entertain such options, the fact that none has been offered not only suggests the novelty of the issue but the fact that no satisfactory alternative exists. For example, in view of the plaintiff’s contentions that a specialized analysis by an expert is required to analyze the book, the court anticipates that an in camera examination by the court (or the parties and their respective attorneys) would be unrewarding; moreover, it appears that a mere factual finding that there were erasures will not satisfy the defendant’s requirements.[4] The court will not, therefore, sua sponte order such an inspection or any other alternative.
The defendant’s motion is, therefore, denied.
Similarly, the plaintiff’s cross motion is also denied. With respect to this determination, the court notes that the application for a reduction of the support aspect of this court’s order dated November 20, 1989 (Geiler, J.) is largely based upon a comparison of the plaintiff’s income tax returns for 1987 and 1990. Noticeably absent, however, are the returns for 1988 and 1989. Additionally, while 1991’s return is not yet due, it is suspected that much of the raw data is available and could be marshaled for this application. Moreover, and as aptly indicated by the defendant, the plaintiff’s sworn testimony at his deposition indicates that he does not declare all of his income; therefore, the information in his tax returns is a patently unreliable basis for the application. Lastly, and in view of the age of this matter, the most appropriate remedy for any claimed inequities in the pendente lite aspect of the litigation is a trial. (Erdheim v Erdheim, 101 AD2d 803 [2d Dept 1984].)
With respect to the branch of the plaintiff’s motion which seeks an order which would authorize him to "handle and manage” the sale of a cooperative apartment, the application *665 has, with few reservations, been essentially unopposed by the defendant. In that the parties have substantially agreed in principle, the need for judicial intervention at this time is questionable. The application is, therefore, denied at this time, without prejudice to this issue being resolved by an appropriate agreement and/or stipulation between the parties.

. As was noted in another context, a coupling of identity and a specific physical injury is improper as it undermines a protection afforded by the privilege. (Matter of Grand Jury Investigation, 90 AD2d 990 [4th Dept 1982] [demand for identification of all patients treated by a hospital for knife wounds in a three-day period improper; this would not only provide the fact of treatment, but the nature of the treatment].) Similarly, in the case at bar, the identity of the patients, plus the plaintiff’s profession, yields the treatment and, therefore, a stigma. (Cf., Gourdine v Phelps Mem. Hosp., 40 AD2d 694 [2d Dept 1972] [in medical malpractice action, merely "time data” discoverable and not identity of other patients who were treated by anesthesiologist at time near alleged tort to plaintiff].)

. The court notes that the very caption of this case seems to tacitly acknowledge the stigma attached to treatment by a mental health professional. Indeed, throughout the opinion, the court referred to the party as "Patient A”.

. In this regard, the court notes that the defendant wishes these patients’ names and addresses in order to serve third-party interrogatories upon them. At the very least, the court finds this to be unsettling.

. As reflected in footnote 3 (supra), the defendant seeks information beyond the mere fact that the "cash” clients’ appointments were erased, she also seeks their names.