Marsha McMASTER n/k/a Marsha Hines, Plaintiff,

v.

IOWA BOARD OF PSYCHOLOGY EXAMINERS and Susan M. Guenther, Defendants.

IOWA BOARD OF PSYCHOLOGY EXAMINERS, Appellee,

v.

Susan M. GUENTHER, Respondent.

Marsha HINES, Appellant.

No. 92–1904.

Supreme Court of Iowa.

Dec. 22, 1993.

Thomas P. Hyland of Hyland, Laden & Pearson, P.C., Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., and Lynette A.F. Donner, Asst. Atty. Gen., for appellee.

LAVORATO, Justice.

The Iowa board of psychology examiners subpoenaed the records of a patient from a psychologist who was not under investigation. The patient had previously been a patient of a psychologist whom the board was investigating. The district court entered an order enforcing the subpoena pursuant to Iowa Code section 258A.6 (1991). (Iowa

Code chapter 258A (1991) has been transferred to chapter 272C of the 1993 Iowa Code.) In challenging the order, the patient raises three questions for us to decide. First, does the mental health professional-patient privilege under Iowa Code section 622.10 bar disclosure? Second, does section 258A.6 authorize the board to subpoena a mental health professional's medical records pertaining to a patient where the professional is not under investigation? Third, would disclosure violate the patient's right of privacy?

We hold that section 622.10 does not bar disclosure. In addition, we hold that section 258A.6 is broad enough to reach the records in the possession of the psychologist not under investigation. We reverse and remand on the right of privacy question to allow the board to make a showing that its need for the records substantially outweighs the patient's right to privacy.

## I. *Background Facts and Proceedings.*

Marsha McMaster sought the professional services of psychologist Todd Hines. Eventually they married. At this point Marsha engaged psychologist Susan Guenther as her personal counselor. Both Todd and Susan are licensed to practice psychology in this state.

The Iowa board of psychology examiners received a complaint regarding Todd Hines. The gist of the complaint concerned some alleged conduct between Todd and Marsha during their psychologist-patient relationship. Marsha was not the source of the complaint.

As part of its investigation the board subpoenaed and received all of Todd's clinical records. The board then informally sought Susan's records regarding Marsha. The board did not seek Marsha's permission for—and Marsha did not authorize—the release of these records. Susan refused to give Marsha's records to the board.

Apparently Marsha became aware of the board's attempt to secure her records from Susan and of the board's intent to subpoena those records. Marsha immediately filed a petition for temporary and permanent injunction and a motion to quash subpoena. The district court, Judge Richard D. Morr, issued a temporary restraining order prohibiting Susan from "releasing or surrendering any and all records in her possession pertaining to the nature and purpose of the client relationship between [Marsha] and [Susan], to any person, agency, or board." The court also set a hearing on Marsha's request for a permanent restraining order.

A week later, the board served a subpoena duces tecum on Susan, demanding the release of "all clinical records pertaining to Marsha" within five days of the subpoena.

On the date set for the hearing on Marsha's request for a permanent restraining order, the board moved to dismiss Marsha's petition. The board alleged the district court lacked jurisdiction because Marsha (1) had not sought judicial review pursuant to Iowa Code chapter 17A, (2) had not exhausted all administrative remedies, and (3) was not aggrieved or adversely affected by any final agency action. Concurrently, the board filed a petition for enforcement of subpoena pursuant to Iowa Code sections 17A.13 and 258A.3. The petition named Susan as the respondent.

By agreement of all the parties the district court, Judge Glenn E. Pille, entertained Marsha's request to intervene in the board's action for enforcement of its subpoena and granted it. In addition all of the parties agreed to (1) submit personally to the jurisdiction of the court on the board's petition for enforcement of subpoena and (2) consolidate and hear at one time all of the various matters before the court. These matters included (1) Marsha's petition for permanent injunction, (2) the board's motion to dismiss Marsha's petition, (3) the board's petition for enforcement of subpoena, and (4) Marsha's objections as intervenor in the board's action for enforcement of subpoena.

Following the consolidated hearing, Judge Pille found that Marsha's petition and the board's motion to dismiss it were moot because all of the parties had agreed to submit personally to the jurisdiction of the court in the board's action to enforce its subpoena. Because the court had personal and subject matter jurisdiction in the board's action,

Judge Pille proceeded to a hearing on the merits regarding the petition to enforce subpoena.

Following the hearing, Judge Pille (1) dismissed Marsha's petition for permanent injunction and (2) ordered Susan to comply with the board's subpoena within twenty days of the filing of his ruling. Additionally, Judge Pille stayed enforcement of his order as to Susan provided either Susan or Marsha appealed within the twenty day period.

Marsha filed an application for interlocutory appeal; Susan did not. In a single justice ruling, we determined Judge Pille's ruling was a final decision appealable as a matter of right.

## II. *Does Iowa Code Section 622.10 Bar Disclosure?*

■ Marsha first contends that the mental health professional-patient privilege in Iowa Code section 622.10 bars disclosure of the records in question. Section 622.10 pertinently provides:

> A practicing attorney, counselor, physician, surgeon, physician's assistant, *mental health professional,* or the stenographer or confidential clerk of any such person, who obtains information by reason of the person's employment ... *shall not be allowed, in giving testimony, to disclose any confidential communication* properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.

Although psychologists are not statutorily considered physicians, they do fall into the category of "mental health professionals" mentioned in section 622.10. *See generally* Iowa Code ch. 154B (regulating practice of psychology).

■ The privilege in section 622.10 is limited to disclosure of confidential communications *by the giving of testimony.* A subpoena duces tecum does not compel disclosing confidential communications by the giving of testimony. *Chidester v. Needles,* 353 N.W.2d 849, 851–52 (Iowa 1984) (subpoena does not require disclosure of privileged communica-

tions by the giving of testimony); *see also Roosevelt Hotel Ltd. Partnership v. Sweeney,* 394 N.W.2d 353, 355 (Iowa 1986) ("Section 622.10 applies only to the testimonial use of privileged information, ... because it comes into play 'in giving testimony.' Testimony is a declaration by a witness in court or during a deposition.").

Here all that the board attempted to do was secure Marsha's medical records in Susan's custody by way of subpoena. Susan was not subpoenaed to testify. In short, section 622.10 does not apply.

## III. *Does Iowa Code Section 258A.6 Authorize the Board to Subpoena a Mental Health Professional's Medical Records Pertaining to a Patient Where the Professional is Not Under Investigation?*

■ The district court concluded that Iowa Code section 258A.6 authorizes the board to subpoena patient records of a psychologist who is not under investigation. Marsha takes issue with this broad interpretation. She urges here, as she did in the district court, that the subpoena reach in section 258A.6 is limited to patient records of a psychologist who is under investigation.

Iowa Code section 258A.6 pertinently provides:

> 1. Disciplinary hearings held pursuant to this chapter shall be heard by the board sitting as the hearing panel....
>
> ....
>
> 3. The presiding officer of a hearing panel may issue subpoenas pursuant to rules of the board.... *A subpoena issued under the authority of a licensing board may compel ... the production of professional records ... whether or not privileged or confidential under law,* which are deemed necessary as evidence in connection with a disciplinary proceeding.

(Emphasis added.)

We think the italicized language is clear. It authorizes the board to issue a subpoena to compel the production of professional records in the custody of *any* mental health professional. The district court correctly determined that the subpoena power of the

board was statutorily broad enough to reach Marsha's professional records in Susan's possession.

The fact that the board's statutory authority is broad enough to reach the records of a mental health professional not under investigation does not, however, resolve the controversy. The remaining question is whether there are any limitations to that authority. A determination that there are such limitations leads to another question: What are those limitations? We address these questions in our discussion of the final issue Marsha raises.

### IV. *Would Disclosure Violate Marsha's Right of Privacy?*

Marsha argues here, as she did in the district court, that she has a constitutional right of privacy that would be violated unless she is allowed to keep her communications with Susan privileged and private. In short, she urges that Iowa Code section 258A.6 is unconstitutional as applied to her.

A. *The right of privacy interest.* We have recognized on two occasions that an individual has an interest in avoiding disclosure of personal matters. *See Head v. Colloton*, 331 N.W.2d 870, 876 (Iowa 1983); *accord Chidester*, 353 N.W.2d at 853. The interest is referred to as a right of privacy and is constitutionally protected. *Colloton*, 331 N.W.2d at 876; *accord Chidester*, 353 N.W.2d at 853.

The United States Supreme Court described the components of the privacy interest this way:

> The cases sometimes characterized as protecting "privacy" have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.

*Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64, 73 (1977) (footnotes omitted). The right of privacy is implicit in the Fourteenth Amendment's concept of personal liberty and as such restricts state action. *Id.* at 599, n. 23, 97 S.Ct. at 876, n. 23, 51 L.Ed.2d at 73, n. 23.

B. *Extending the right of privacy to professional records of mental health professionals.* Though not all courts agree, the majority of them hold that the right of privacy should extend to the patient records of mental health professionals. *See In re Zuniga*, 714 F.2d 632, 638–39 and n. 3 at 639 (6th Cir.) (citing state and federal jurisdictions that do and do not extend privilege), *cert. denied*, 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983). We join those courts that extend constitutional protection to such records. Our reasons for doing so are eloquently expressed in the following passage:

> Psychotherapy probes the core of the patient's personality. The patient's most intimate thoughts and emotions are exposed during the course of the treatment. The psychiatric patient confides [in his therapist] more utterly than anyone else in the world.... [H]e lays bare his entire self, his dreams, his fantasies, his sin, and his shame. The patient's innermost thoughts may be so frightening, embarrassing, shameful or morbid that the patient in therapy will struggle to remain sick, rather than to reveal those thoughts even to himself. The possibility that the psychotherapist could be compelled to reveal those communications to anyone ... can deter persons from seeking needed treatment and destroy treatment in progress.

*Hawaii Psychiatric Soc'y v. Ariyoshi*, 481 F.Supp. 1028, 1039 (D.Haw.1979) (citations omitted) (licensed clinical psychologist and nonprofit corporation made up of 115 psychiatrists sued Hawaii state officials to enjoin enforcement of Hawaii statute authorizing issuance of administrative inspection warrants to search offices and records of Medicaid providers for investigation and prosecution of Medicaid fraud; held that statute was subject to scrutiny under compelling state interests standard).

We think both prongs of the right of privacy interest extend to the records of the mental health professional. A patient has an interest in avoiding disclosure of these records because of the obvious personal and intimate information contained in them. The patient also has an interest in keeping independent the patient's choice to seek the help

of mental health professionals. This is so because in some circles a social stigma still attaches to anyone who merely seeks the help of such professionals. If the patient cannot be assured that the choice to seek help will be kept confidential, that choice is severely limited.

 The constitutional privacy interest is not, however, absolute. At most it is a qualified rather than an absolute privilege. *Chidester*, 353 N.W.2d at 853. In determining whether the privilege attaches, we apply a balancing test:

> The privacy interest must always be weighed against such public interests as the societal need for information, and a compelling need for information may override the privacy interest.

*Id.* The public interest in this case is the board's statutory obligation to police the mental health professions. *See generally* Iowa Code chs. 147 (regulating professions generally), 154B (regulating practice of psychology), 258A (empowering licensing boards to sanction licensees for improper conduct).

 C. *Necessary showing.* Procedurally, we impose the burden on the board to establish the need for intrusion on a person's right of privacy. We have no hesitancy in doing so for two reasons. First, the right is constitutionally protected. Second, we think the statute imposes such a burden. *See* Iowa Code § 258A.6(3) ("Upon proper showing, the district court shall order the person to obey the subpoena. . . .").

 What showing should the board make to justify intrusion? First, the board should make a minimal showing that the complaint reasonably justifies the issuance of a subpoena in furtherance of the investigation. As one court explained, such a showing

> will necessarily vary from case to case. It may relate to the reliability of the complainant; it may be shown by the substance of the complaint. Specific detail as to identification of the complainant, some evidence of [the complainant's] good faith or reliability, disclosure of the basis for [the complainant's] knowledge of the substance of the complaint, with dates to establish its currency, and some revelation of

the substance of the complaint will normally suffice, but all or most of this data may not be necessary. Sufficient authenticating detail may be found in the complaint itself; if not, it must be independently supplied.

*Levin v. Murawski,* 59 N.Y.2d 35, 42, 449 N.E.2d 730, 733–34, 462 N.Y.S.2d 836, 840 (1983) (recital that state medical board had received a third-party complaint alleging professional misconduct, with no identifying or authenticating detail, was insufficient basis for issuing official subpoena for production of medical records).

Second, the board should establish that the records are necessary as evidence in connection with the disciplinary proceeding. This requirement comes right from the statute. *See* Iowa Code § 258A.6(3) ("A subpoena issued under the authority of a licensing board may compel . . . the production of professional records . . . *which are deemed necessary as evidence in connection with a disciplinary proceeding.*") (emphasis added).

To make this determination, the district court will necessarily have to review the medical records in camera and determine whether the records are essential to establishing the allegations of the complaint. Relevancy becomes a critical issue here. If the district court determines there is no relationship between the records sought and the allegations of the complaint, that should end the matter. *See In re A–85–04–38,* 138 Misc.2d 786, 788, 525 N.Y.S.2d 479, 481 (1988) (patient's records held by subsequent treating psychiatrist were insufficiently relevant to investigation of another psychiatrist for professional misconduct and could not be subpoenaed by medical board investigating complaint not initiated by patient; basis for subpoena included no allegations remotely involving records). If the court determines there is such a relationship, it should allow the board access to only those portions of the record that are deemed relevant.

In addition, the party subpoenaed should redact from the patient's records all identifying information about the patient before submitting such records to the district court. This requirement is consistent with the stat-

utory provision regarding confidentiality as to a person whose privilege has been involuntarily waived. *See* Iowa Code § 258A.6(4) ("Notwithstanding the provisions of section 17A.19 subsection 6 [requirement that agency transmit original record to district court on appeal of agency decision], if a waiver of privilege has been involuntary and evidence has been received at a disciplinary hearing, the court shall order withheld the identity of the individual whose privilege was waived.").

Third, the board should establish that it notified the patient and attempted to obtain an authorization from the patient for release of the records before issuing the subpoena. *See Wood v. Superior Court,* 166 Cal.App.3d 1138, 1147–48, 212 Cal.Rptr. 811, 820–21 (1985) (in investigating medical propriety of prescribing drugs, medical board must take reasonable steps to notify patient of its proposed examination of patient records and attempt to secure authorization to release records).

Fourth, the board should establish that there are adequate safeguards to prevent unauthorized disclosure. *See United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 578 (3rd Cir.1980) (listing factors to consider in determining whether intrusion into an individual's privacy is justified).

Last, the board should establish whether there is "an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Id.*

**D.** *The showing here.* In fairness to the board and the district court, neither had the benefit of the foregoing analysis. Consequently, the record lacks a substantial showing for the need to enforce the subpoena and intrude on Marsha's right of privacy. For example, there was no showing of the authenticity of the complaint.

Nor was there any showing beyond conclusory statements that the records are necessary. In this respect one of the board members testified:

Q. In regard to the records sought by the subpoena, did you determine—why did you determine that those were necessary? A. We have other sources of information that have pointed to the significance of those records in investigating this particular case.

. . . .

Q. Are these records relevant to [the contested case pending in regard to ... Todd Hines]? A. I think so, yes.

. . . .

Q. In what way are your records relevant to your investigation to your knowledge, your personal knowledge? A. I believe the records are relevant in terms of the time frame that they cover. I believe they're relevant to conclusions that may be drawn about the other psychologist's conduct.

. . . .

Q. In what way do those records support the conclusions which you have drawn concerning the conduct of this psychologist? A. I don't know that they support it. I believe that they have information relevant.

Q. But you don't know that? A. I don't know that they support it.

Q. You don't know what those records relate to? A. I don't know. I haven't seen them.

In this connection, the district court made no in camera inspection of Marsha's records to establish their relevancy.

The board made no attempt to secure Marsha's authorization for release of the records. Nor did the board attempt to notify her of its intent to subpoena the records. As it turned out, this was not significant because Marsha knew what was happening and was able to resist the board's efforts in court.

Iowa Code section 258A.6(4) does provide confidentiality safeguards to prevent public disclosure of the information in Marsha's records. *See* Iowa Code § 258A.6(4) (statutory language broad enough to prevent disclosure of medical records). Such safeguards, however, are only one factor for a court to consider in the balancing process and should not be controlling. This is so because of the unique personal nature of the records. Mental health practitioner's records

may include the patient's most intimate thoughts and emotions, as well as descrip-

tions of conduct that may be embarrassing or illegal. *The possibility that those records could be disclosed to anyone, whether it be state officials or the public, is sufficient to constitute an intrusion into the right of privacy. ...*

*Hawaii Psychiatric Soc'y,* 481 F.Supp. at 1041 (emphasis added).

Finally, we acknowledge that there is a recognizable public interest favoring access. As we said, the board has a statutory obligation to police the mental health professions. Apparently, the board is proceeding against Todd because of some alleged conduct between him and Marsha while she was his patient. However, we have no inkling from the record what that alleged conduct was. We can only speculate that the conduct involved a breach of mental health professional ethics. If that is the case, the public interest is the need for the board to have Marsha's records to carry out its statutory duty to police the mental health professions.

V. *Disposition.*

Because the record is wholly inadequate to justify an intrusion into Marsha's right of privacy, we must reverse the district court's order enforcing the subpoena. However, we remand to allow the board an opportunity to make the kind of showing this opinion deems necessary to support the board's request for enforcement of its subpoena. If the board elects to proceed to make such a showing, the district court must then determine in accordance with this opinion whether the showing is sufficient to justify the intrusion. In short, the district court must determine whether the board's need for the records substantially outweighs Marsha's privacy interest.

The board may feel hampered in making the necessary showing for the subpoena because of the confidentiality requirement in section 258A.6(4). That provision pertinently provides:

In order to assure a free flow of information for accomplishing the purposes of this section, and notwithstanding section 622.10, *all complaint files, investigation files, other investigation reports, and other investigative information in the possession of a licensing board* or peer review committee acting under the authority of a licensing board or its employees or agents *which relates to licensee discipline are privileged and confidential, and are not subject to discovery, subpoena, or other means of legal compulsion for their release to a person other than the licensee and the boards,* their employees and agents involved in licensee discipline, *and are not admissible in evidence in a judicial* or administrative *proceeding* other than the proceeding involving licensee discipline.... However, a final written decision and finding of fact of a licensing board in a disciplinary proceeding ... is a public record.

(Emphasis added.)

The district court, however, has broad discretion to enforce this confidentiality requirement without hampering the board's attempt to make the necessary showing for the subpoena. The obvious procedure to accommodate the board's showing and to protect confidentiality is an in camera hearing with a protective order prohibiting disclosure of any evidence presented.

**REVERSED AND REMANDED WITH DIRECTIONS.**

All Justices concur except CARTER and SNELL, JJ., who dissent.

CARTER, Justice (dissenting).

Without either adopting or rejecting the propositions made in the dissent of Snell, J., I would hold, purely as a matter of statutory interpretation, that in enacting section 258A.6 the legislature did not intend to allow the Board to subpoena patient records of a health care professional not under investigation in connection with a disciplinary proceeding.

SNELL, Justice (dissenting).

I respectfully dissent.

The majority opinion convincingly presents the case for protecting the confidentiality of communications between a patient and the psychologist from whom professional advice is sought. Authorities are cited that speak

eloquently of the need to guard a patient's right of privacy, lest the harsh glare of exposure buries the hope for treatment in the dark recesses of fear. Recognition of this need to provide a measure of protection under law is accorded by the majority in requiring an in camera inspection. However, I believe that the confidentiality thus sought to be protected is compromised by the majority's analysis of the statutes and is inadequately safeguarded by any in camera inspection.

The statute controlling the majority's result is section 258A.6 (1991) captioned "Hearings—Power of Subpoena—Decisions." (currently codified at Iowa Code § 272C.6 (1993)). That section provides subpoena powers to licensing boards authorized to perform various functions set out by the legislature under a general regulation chapter called "Continuing Education and Regulations—Professional and Occupational." (Iowa Code ch. 258A (1991)). Chapter 258A covers general provisions for twenty-seven regulating boards or commissions including shorthand reporters, barber examiners, landscape architect examiners, and hearing aid dealers. *Id.* § 258A.1(1)(b), (f-g), (v). Section 258A.6 is a general statute applying wholesale to all of the twenty-seven boards or commissions grouped under Chapter 258A. Nothing in Section 258A.6 makes any reference to the Board of Psychology Examiners or gives any indication of a legislative intent to dilute or abridge the right of privacy inherently needed in the patient-psychologist relationship. Actually, a contrary legislative intent is indicated by specifically stating that information privileged against disclosure under section 622.10 shall not be obtained by a licensing board by means of section 258A.6. *Id.* § 258A.6(3). That would include information sought in the instant case from Marsha Hines's psychologist. It is also made clear in the statute on subpoena power that information gathered by the board will lose all privacy protection. *Id.* § 258A.6(4). Professional records, papers, and correspondence—whether or not privileged or confidential under law—become evidence in the disciplinary proceeding. *Id.* Subsection (4) of section 258A.6 further provides that a final written decision and finding of fact of the licensing board is a public record. *Id.* Thus, the confidential thoughts, fears, hopes, and secret dreams of the patient confided to her psychologist may well appear as supporting facts in the board's decision, for all the world to see. Small solace and unlikely anonymity is provided by the statute's authorizing the court to withhold the identity of the patient whose confidences are publicly proclaimed. *See id.*

We considered the statutory protection given to communications received in professional confidence in *Newman v. Blom,* 249 Iowa 836, 89 N.W.2d 349 (1958). We held that medical records that contained information gathered from a patient were to be considered "confidential communications" under section 622.10 because the records contained information which would be inadmissible at trial as oral testimony from the physician. *Id.* at 843–45, 89 N.W.2d at 354–56. We said:

> Prohibited direct revelations by a doctor cannot be revealed by indirect methods.
>
> We have in the past had several occasions to discuss our privilege statute (section 622.10) and, as to the extent of the matters covered, we announced the rule that we will draw no fine lines as to whether a communication, professionally secured, is necessary or unnecessary. The policy of the statute is to provide for great freedom of disclosure by a patient to his physician, for the patient is often in no position to know what disclosures may or may not be necessary for his proper treatment.

*Id.* at 843, 89 N.W.2d at 354–55 (citations omitted). In *Howard v. Porter,* 240 Iowa 153, 155, 35 N.W.2d 837, 838 (1949), we stated that section 622.10

> should receive a liberal construction designed to carry out its manifest purpose to make consultation by a patient with his physician entirely confidential and free from anticipation or fear that this confidence will be broken by the examination of the physician as a witness in some legal proceedings.

*Id.* 249 Iowa at 844, 89 N.W.2d at 355.

In *Chidester v. Needles,* we cited with approval our construction of section 622.10 in

*Newman,* but distinguished it from the issue involved in *Chidester. Chidester v. Needles,* 353 N.W.2d 849, 852 (Iowa 1984). In *Chidester* the issue concerned a nontestimonial setting in which a subpoena duces tecum was issued under Iowa Rule of Criminal Procedure 5(6) as part of a county attorney's general investigatory power in lieu of a grand jury proceeding. *Id.* We noted that information obtained under rule 5(6) may not be used to perpetuate testimony for trial. *Id.* at 852. Moreover, documents produced in response to a county attorney's subpoena remain confidential unless and until criminal charges are filed and the court may thereafter order such documents to remain confidential. Iowa R.Crim.P. 5(6). Under these circumstances, we held that the statutory patient-physician privilege under section 622.10 must yield to the subpoena requirements of Iowa Rule of Criminal Procedure 5(6). *Id.* at 853.

We also held in *Chidester* that the patient's constitutional privacy interest must yield to the state's interest in well-founded criminal charges and the fair administration of criminal justice. *Id.* at 853–54.

The same considerations are not present in the case at bar as in *Chidester.* There are no criminal charges involved or suggested against psychologist Hines, psychologist Guenther, Marsha McMaster Hines or anyone else. Criminal administration is not involved. Further, there are no protections in the instant case against disclosure of confidential information, unlike those in *Chidester* found to be of special significance. The fact that the information sought by the Board of Psychology Examiners will be evidence and may well be a public record places this case clearly within the scope of the protection outlined by our court in *Newman* rather than under the narrow sphere of *Chidester.*

The constitutional right of privacy should extend to the patient records of mental health professionals, as held by the majority. However, the majority fractures this principle, by holding that a sufficient showing of need by the Board of Psychology Examiners will prevail over the right to privacy protection. I do not concede that the privacy privilege can be overcome by any showing of some compelling need for the information sought by the Board of Psychology Examiners.

This case is a poor vehicle for deciding a legal point of such sweeping dimension. We have no idea what information is sought; the Board either does not know or has kept it a secret.

Yet, faced with a vacuum of facts from which to consider whether a compelling interest of the Psychology Board should subjugate the patient's constitutional right of privacy, the majority held it was possible and remanded for the Board to make a showing. In so doing, the court has assumed legitimacy where the United States Supreme Court has cautioned against it.

"Where certain fundamental rights are involved, the Court has held that regulations limiting these rights may be justified only by a compelling state interest, and that legislative enactments must be narrowly drawn to express only the legitimate interests at stake." *Roe v. Wade,* 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147, 178 (1973) (citations omitted). If there are less drastic means to achieve a compelling state interest with a lesser burden on constitutionally protected rights, the state must utilize those means. *Attorney General of New York v. Soto–Lopez,* 476 U.S. 898, 909–10, 106 S.Ct. 2317, 2324, 90 L.Ed.2d 899, 910 (1986). The state cannot employ means that broadly stifle fundamental liberties when the end can be more narrowly achieved. *Carroll v. President and Comm'rs of Princess Anne,* 393 U.S. 175, 183–84, 89 S.Ct. 347, 353, 21 L.Ed.2d 325, 333 (1968).

Moreover, statutes affecting constitutional rights must be "drawn with precision," and must be "tailored to serve" their objectives. *Dunn v. Blumstein,* 405 U.S. 330, 343, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274, 285 (1972).

This statute, section 258A.6, under the majority's construction of it today, is far from "narrowly tailored." To the contrary, in its protection of a citizen's constitutional privacy rights it leaves the scissors in the hands of licensing boards free to shear off whatever fabric they wish from an individual's raiment of liberties. Chapter 258 is much too broad

in scope to allow such an infringement on personal liberty. If an intrusion of this sort is constitutional at all, it should be provided for under a much more precise enactment. The fact that the majority provides for in camera review does not alleviate the constitutional concerns in this case. Nor does the majority's requirement that the Board show that the patient's confidential records are relevant to its investigation provide any real privacy protection. Disagreements about what is relevant have fueled lawyers and judges for hundreds of years. And, whatever decision is made by the district court is appealable through the state or federal appellate process, automatically expanding the in camera inspection to scores or more reviewers. The constitutional right of privacy should not be diminished, as it is, under the facts and law of this case. No citizen should be forced, without compelling reason and adequate constitutional safeguards, to turn over their dreams, fantasies, sins, and shame, even to the most sensitive stranger.

The Board has already obtained the records of Dr. Hines, who is the subject of its investigation. Other information can be considered through voluntary sources. There is no compelling state interest to justify the Board's invasion of privacy.

I believe section 622.10 bars the compulsory production of Marsha Hines's patient records from her psychologist, Susan Guenther and section 258A.6 as applied by the majority is of doubtful constitutionality. On this basis I would hold that section 258A.6 does not permit the Board to subpoena records of a person not under investigation in connection with a licensee disciplinary hearing.