# IN THE SUPREME COURT OF IOWA

No. 08–2075

Filed December 30, 2010

**JERRY L.** and **SUSAN ASHENFELTER,**

Appellees,

vs.

**AMY S. MULLIGAN,**

Appellant.

Appeal from the Iowa District Court for Plymouth County, Jeffrey A. Neary, Judge.

On interlocutory appeal, appellant contends district court improperly ordered her to disclose medical and mental health records to appellees. **DISTRICT COURT ORDER REVERSED.**

Jennifer H. Cerutti, Iowa Legal Aid, Sioux City, for appellant.

Elizabeth A. Rosenbaum, Sioux City, for appellees.

**STREIT, Justice**.

Amy Mulligan appeals a district court order allowing her parents, Jerry and Susan Ashenfelter, to review her medical and mental health records for purposes of their petition seeking grandparent visitation with Amy's son, A.M. This case has become moot because the ability to seek court-ordered grandparent visitation is now limited to grandparents whose own child has died. Because the issue of mental and medical health records in the grandparent visitation context is likely to reoccur, however, we choose to reach the issue. Amy has a statutory and constitutional right to privacy in her medical and mental health records, and the Ashenfelters failed to override that right with a countervailing interest. The district court order is reversed.

### I. Background Facts and Prior Proceedings.

Amy Mulligan and Alan Mulligan[1] are parents to six-year-old A.M. Jerry and Susan Ashenfelter are Amy's parents and A.M.'s grandparents. Amy and Alan separated in December 2007 and had a pending dissolution action when the Ashenfelters sought visitation. Soon after Amy and Alan's separation, Amy decided it was in A.M.'s best interest not to see his grandparents (her parents), the Ashenfelters. The Ashenfelters filed a petition seeking grandparent visitation pursuant to Iowa Code section 600C.1 (Supp. 2007).

The Ashenfelters served discovery requests on Amy seeking (1) a complete copy of Amy's 2008 commitment court file, including any and all reports, records, etc., submitted by Dr. Dean and/or Siouxland Regional Medical Center and Dr. Patra; (2) a complete copy of Amy's 2007 commitment court file, including any and all reports, records, etc.,

---

[1]For clarity, we refer to Amy Mulligan and Alan Mulligan by their first names.

submitted by Dr. Dean, Dr. Patra, and Mercy Medical Center;[2] (3) a complete copy of Amy's 2007 medical records for Mercy Medical Center; (4) a complete copy of Amy's 2008 medical records from Siouxland Regional Medical Center; (5) a complete copy of any and all records from Plains Area Mental Health regarding Amy from January 1, 2004, to present time; (6) a complete copy of any and all records regarding Amy from Jackson Recovery Center from January 1, 2004, to present time; (7) a complete copy of any and all records regarding Amy from Dr. Dean's office from January 1, 2004, to present time; and (8) any and all notes, records, or reports regarding Amy from counseling sessions at the Council on Sexual Assault and Domestic Violence (CSADV) and with Cathy VanMaanen from January 1, 2004, to the present time.

The Ashenfelters also presented interrogatories asking Amy to "[l]ist all physicians and medical providers and mental health providers and facilities who have provided care to you since January 1, 2004, by providing" the name of the provider, phone number and address of the provider, dates seen, reasons they saw Amy, and the last time Amy was treated by the provider. The interrogatories sought Amy's current mental health diagnosis and all medications currently prescribed to Amy, including the name, dosage, and frequency.

Amy moved for a protective order. The district court held that because the Ashenfelters must prove Amy is unfit to make a decision regarding grandparent visitation in order to obtain visitation, Amy's mental health is at issue. The court held that because Amy's mental health is at issue, the statutory physician-patient privilege in Iowa Code section 622.10 does not apply. The district court ordered production of

---

[2]The parties agree there is no such court file because Amy was voluntarily hospitalized.

all documents requested by the Ashenfelters except for the request relating to documents from the CSADV. The court also ordered Amy to answer all interrogatories.

We granted an application for interlocutory appeal and an emergency stay. We reverse.

## II. Scope of Review.

Discovery decisions are typically reviewed for abuse of discretion. *State v. Schuler*, 774 N.W.2d 294, 297 (Iowa 2009). However, this court reviews the interpretation of Iowa Code section 622.10 for correction of errors at law. *Chung v. Legacy Corp.*, 548 N.W.2d 147, 149 (Iowa 1996). Constitutional claims are reviewed de novo. *Santi v. Santi*, 633 N.W.2d 312, 316 (Iowa 2001).

## III. Merits.

**A. Mootness.** Amy filed a motion to dismiss based on grounds of mootness. We agree the case is moot. The Ashenfelters sought grandparent visitation with Amy's child, A.M., on August 21, 2008, under the then-existing grandparent visitation statute, Iowa Code section 600C.1. The Ashenfelters are Amy Mulligan's parents. Under section 600C.1 as it existed in 2008, grandparents could petition for grandparent visitation, provided they met the requirements of the statute: (1) the grandparents have a substantial relationship with the child, (2) the parent is unfit to make the decision regarding visitation, and (3) visitation is in the best interest of the child.

After the Ashenfelters's filed their petition, the Iowa legislature struck section 600C.1 in its entirety and replaced it. 2010 Iowa Acts ch. 1193, § 130. The new grandparent visitation section took effect July 1, 2010. The current section 600C.1 provides the right to petition for grandparent visitation "when the parent of the minor child, who is the

child of the grandparent or the grandchild of the great-grandparent, is deceased." Iowa Code § 600C.1(1). Amy moved to dismiss because the Ashenfelters are her own parents, and because she is not deceased, the Ashenfelters do not have standing under the current section 600C.1 to seek visitation.

Application of the current section 600C.1 is straightforward and precludes the Ashenfelters' petition. "As a rule, every case must be determined on the law as it stands at the time judgment is pronounced." *Windsor v. City of Des Moines*, 110 Iowa 175, 179, 81 N.W. 476, 477 (1900). Although the "legislature cannot impair the obligation of contracts, nor by subsequent legislation disturb vested rights," here, as in *Windsor,* the parties' rights have not vested because there has been no final decree. *Id.*

> This is a suit in equity, and is triable de novo in this court. Until final decree is passed, there is no vested right to be disturbed, and the case must be determined on the law as it now stands. These are elementary propositions . . . .

*Id.* at 180, 81 N.W. at 477.

Amy also notes the legislative change to the grandparent visitation statute is a substantial change in circumstances which would allow modification of a grandparent visitation award. *See Spiker v. Spiker*, 708 N.W.2d 347, 358–59 (Iowa 2006) (holding ruling that grandparent visitation statute was unconstitutional entitled parent to seek modification of grandparent visitation award); *cf. In re Marriage of Feustel*, 467 N.W.2d 261, 265 (Iowa 1991) (holding a change in federal income tax law regarding claiming children as dependents constituted substantial change in circumstances). Although *Spiker* and *Feustal* both dealt with awards that were already entered, their reasoning suggests the Ashenfelters' petition should be dismissed. As this court noted in *Spiker,*

the grandparents " 'have no power to require of the court continuing enforcement of rights the [grandparent visitation] statute no longer gives.' " *Spiker*, 708 N.W.2d at 358 (alteration in original) (quoting *Sys. Fed'n No. 91, Ry. Emps.' Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 652, 81 S. Ct. 368, 373, 5 L. Ed. 2d 349, 355 (1961)). Although the Ashenfelters had a statutory right to petition for grandparent visitation in 2008, they no longer have such a right in 2010. Because the Ashenfelters cannot require "enforcement of rights the grandparent visitation statute no longer gives," *id.*, it follows that the Ashenfelters cannot be allowed to pursue a petition the statute no longer permits.

Although the case is now moot, we may choose to reach the basic underlying question after considering the following criteria: " '(1) the public or private nature of the question presented, (2) desirability of an authoritative adjudication for future guidance of public officials, and (3) likelihood of future recurrence of the same or similar problem.' " *Rush v. Ray*, 332 N.W.2d 325, 326 (Iowa 1983) (quoting *Bd. of Dirs. of Ind. Sch. Dist. v. Green*, 259 Iowa 1260, 1265, 147 N.W.2d 854, 856 (1967)). Here, we believe individual privacy interests in medical and mental health records presents an issue of great public interest. Also, we foresee this issue arising in the future, in the context of grandparent visitation as well as other civil contexts. Therefore, we proceed to address the issue.

**B. Protection of Amy's Medical and Mental Health Records under Iowa Code Section 622.10.** Amy argues her medical records are protected under Iowa Code section 622.10. Section 622.10 provides:

> A practicing . . . counselor, physician, . . . [or] mental health professional, . . . who obtains information by reason of the person's employment . . . shall not be allowed, in giving testimony, to disclose any confidential communication

> properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.

Iowa Code § 622.10(1).

1. *Applicability of section 622.10.* Amy argues her medical and mental health records are protected from discovery by the privilege found in section 622.10. The Ashenfelters argue section 622.10 does not protect the records and information they seek because compliance with the discovery requests does not require disclosure "in giving testimony." *See id.*

In *Newman v. Blom*, 249 Iowa 836, 89 N.W.2d 349 (1958), this court held a medical record could not be admitted into evidence because it was properly considered a privileged "communication" under Iowa Code section 622.10. *Newman*, 249 Iowa at 843–44, 89 N.W.2d at 354–55. Therefore, any attempt by the Ashenfelters to introduce the medical records they seek would invoke consideration of section 622.10. This raises the question, however, of whether the protections of section 622.10 apply to discovery of such medical records prior to introduction at trial.

Some of this court's previous cases suggest medical or mental health records sought during discovery are not protected by section 622.10, although these cases either did not directly address the issue or are easily distinguished. In *Chidester v. Needles*, 353 N.W.2d 849 (Iowa 1984), the court held the phrase "in giving testimony" meant section 622.10 did not protect a patient's documents sought by a county attorney conducting an investigation into Medicaid fraud. *Chidester*, 353 N.W.2d at 852. The court emphasized that the patient's doctor was not being required to testify "indirectly" because the documents were sought

only for an investigation, they would remain confidential, and they could not be used as testimony for trial. *Id.* at 852–53. Similarly, in *McMaster v. Iowa Board of Psychology Examiners*, 509 N.W.2d 754 (Iowa 1993), the court held that section 622.10 did not protect medical records sought by the Iowa Board of Psychology Examiners as part of an investigation of a practicing psychologist. *McMaster*, 509 N.W.2d at 757. The court held that the board's subpoena did not fall under the provision of section 622.10 protecting "testimony." *Id.* Unlike the state investigations at issue in *Chidester* and *McMaster*, the Ashenfelters sought Amy's records for pending civil litigation that does not involve the state or a licensing board as a party.

In *Roosevelt Hotel Ltd. Partnership v. Sweeney*, 394 N.W.2d 353 (Iowa 1986), we stated: "Testimony is a declaration by a witness in court or during a deposition." *Roosevelt Hotel*, 394 N.W.2d at 355. This statement could be interpreted to suggest "testimony" as used in section 622.10 does not include medical records. However, *Roosevelt Hotel* was concerned with ex parte interviews—as compared with in-court verbal testimony—and did not address medical records. *See id.* at 354. Additionally, in *Newman*, where medical records were sought to be introduced at trial, the court held they were protected by section 622.10. *Newman*, 249 Iowa at 843–44, 89 N.W.2d at 354–55.

This court's more recent cases suggest the privilege found in section 622.10 does extend to documents sought during discovery. *State v. Eldrenkamp*, 541 N.W.2d 877 (Iowa 1995), reiterated that information found in medical records contains "privileged communications under section 622.10 'to the same extent that the knowledge and information of the examining or treating physician is privileged.' " *Eldrenkamp*, 541 N.W.2d at 881 (quoting *Newman,* 249 Iowa at 844, 89 N.W.2d at 355). In

*Eldrenkamp*, the issue surrounded a blood sample taken in Illinois, and because Illinois had a statute specifically excluding the physician-patient privilege in homicide cases, the court held the records were discoverable. *Id.*

The next year, in *Chung*, the court directly addressed a request for medical records during discovery. *Chung*, 548 N.W.2d at 148. The court held the "statutory rule of testimonial exclusion has been extended by rule to the discovery of confidential communications." *Id.* at 149. The court cited to Iowa Rule of Civil Procedure 1.503—then rule 122(a)—which prohibits discovery of privileged materials. *Id.* Essentially, the court held that because medical records are privileged under Iowa Code section 622.10 when introduced as evidence, they are privileged matters protected from discovery under rule 1.503. *Id.*

In *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006), the court again reiterated that the statutory protection of privileged information extends to medical records, noting "the privilege would be virtually meaningless if it prohibited testimony but did not protect the very records upon which such testimony would be based." *Heemstra*, 721 N.W.2d at 560. The court also explained that "[u]nder rule of civil procedure 1.503(1), privileged information is generally not even discoverable." *Id.* Despite this discussion, *Heemstra* did allow for limited disclosure of medical records in an *in camera* review. *Id.* at 563. *Heemstra* was a criminal case in which the defendant sought medical records to help prove his defense of self-defense. *Id.* at 559. This court held that "privileges must be tempered by defendants' constitutional right to present a defense." *Id.* at 562. Similarly, this court recently provided a protocol for evaluating whether medical records will be submitted for attorney review in a

criminal case based on constitutional considerations. *See State v. Cashen*, 789 N.W.2d 400, 408–10 (Iowa 2010).

The medical records sought by the Ashenfelters are protected from use as testimony and therefore from introduction at trial pursuant to Iowa Code section 622.10. *See Eldrenkamp*, 541 N.W.2d at 881 (holding medical records are privileged " 'to the same extent that the knowledge and information of the examining or treating physician is privileged.' " (quoting *Newman*, 249 Iowa at 844, 89 N.W.2d at 355)). This is a civil case. Iowa Rule of Civil Procedure 1.503 prohibits discovery of privileged materials. Therefore, because the medical records are privileged materials under section 622.10, they are not discoverable under rule 1.503. *Chung*, 548 N.W.2d at 149.

2. *Patient-litigant exception under Iowa Code section 622.10.* Section 622.10 provides an exception to the privilege in certain circumstances when a patient is also a litigant. The privilege does not apply:

> in a civil action in which the condition of the person in whose favor the prohibition is made is an element or factor of the claim or defense of the person or of any party claiming through or under the person.

Iowa Code § 622.10(2). The district court held the patient-litigant exception applies to Amy's medical records because her fitness is an issue in the case; and therefore, Amy's records are discoverable. We disagree.

The language of the patient-litigant exception requires that the condition of the patient be an element or factor in a claim or defense of the patient. As this court explained in *Chung*, "[t]he statute requires the condition be an element or factor of the claim or defense *of the person claiming the privilege.*" 548 N.W.2d at 150. We have specifically rejected

the argument that a litigant's opponent can bring the litigant's medical records into issue. *Id.* Additionally, "[t]he denial of an element or factor of one's *opponent's* case does not make that element or factor part of the case of the person making the denial." *Id.* "[T]he mere act of denying the existence of an element or factor *of an adversary's* claim does not fall within the statutory language." *Id.*

Here, the Ashenfelters bear the burden to prove Amy is unfit. Amy's fitness, and therefore her mental health, is an element or factor in the Ashenfelters's claim. Amy's mere act of denying the Ashenfelters's claim that she is unfit does not fall within the patient-litigant exception in section 622.10.

**C. Constitutional Right to Privacy.** Amy argues her records are protected by the constitutional right to privacy. We agree. Mental health and medical records are protected by a constitutional right to privacy. *See Cashen*, 789 N.W.2d at 407 ("We recognize a patient's right to privacy in his or her mental health records . . . ."); *McMaster*, 509 N.W.2d at 758 ("[T]he majority of [courts] hold that the right of privacy should extend to the patient records of mental health professionals. . . . We join those courts that extend constitutional protection to such records.").

**D. Balancing Test.** The Ashenfelters argue Amy's statutory privilege and constitutional right to privacy protecting her medical and mental health records can be overcome through the use of a balancing test. As we explained in *Cashen,* the constitutional right to privacy in medical and mental health records is "not absolute, but qualified." 789 N.W.2d at 406. Similarly, in discussion of Iowa Code section 622.10, *Heemstra* applied a balancing test and explained that "these privileges must be tempered by defendants' constitutional right to present a defense." 721 N.W.2d at 562.

The balancing test weighs an individual's privacy interest against other public interests such as "the societal need for information" possessed by official investigators of criminal activity, *Chidester*, 353 N.W.2d at 853, "society's interest in securing information vital to the fair and effective administration of criminal justice," *id.*, and the "defendants' constitutional right to present a defense," *Heemstra*, 721 N.W.2d at 562; *accord Cashen*, 789 N.W.2d at 407.

The United States Supreme Court has suggested that a balancing test will never be appropriate in a civil case. In *Jaffee v. Redmond*, 518 U.S. 1, 116 S. Ct. 1923, 135 L. Ed. 2d 337 (1996), the Court expressly rejected the Seventh Circuit's use of a balancing test to determine whether the medical records of the defendant in a federal civil action were discoverable. *Jaffee*, 518 U.S. at 17, 116 S. Ct. at 1932, 135 L. Ed. 2d at 349. The court held that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Id.* Because we hold that even if we were to apply a balancing test, Amy's medical records must remain protected, we need not address whether the balancing test is inappropriate in all civil cases.

The Ashenfelters have not asserted a counterbalancing consideration that would override Amy's privilege in her mental and medical health records. This is a civil proceeding. Unlike our recent decision in *Cashen*, the constitutional right to a fair trial is not implicated.

We reject the Ashenfelters's attempt to characterize the interest they assert as the best interest of A.M. Amy is presumed to act in the best interest of A.M. *In re Marriage of Howard*, 661 N.W.2d 183, 190

(Iowa 2003) (noting "presumption of fitness accorded a parent"); *Santi*, 633 N.W.2d at 319 (noting "historical presumption that fit parents act in the best interests of their children"). Amy's parental interest in the care, custody, and control of A.M. is a fundamental liberty interest protected by the United States and Iowa Constitutions. *See Marriage of Howard*, 661 N.W.2d at 191–92 (holding grandparent visitation statute unconstitutional because it allowed the court to grant grandparent visitation where parents were divorced without a determination of parental unfitness); *Santi*, 633 N.W.2d at 321 (holding grandparent visitation statute unconstitutional as applied to married parents because it did not require a determination of parental unfitness); *see also Troxel v. Granville*, 530 U.S. 57, 67, 120 S. Ct. 2054, 2060–61, 147 L. Ed. 2d 49, 57 (2000) (holding Washington's third party visitation statute was unconstitutional because it failed to presume a fit parent makes decisions in the best interests of the child).

Amy is presumed to be a fit parent and she has made a determination that visitation with the Ashenfelters is not in the best interest of A.M. The Ashenfelters's reliance on *In re Hough*, 590 N.W.2d 556 (Iowa Ct. App. 1999), to suggest the courts may simply analyze the best interests of the child in grandparent visitation cases is misplaced. *See Hough*, 590 N.W.2d at 558. *Hough* was based on a prior visitation statute and decided before *Santi* and *Marriage of Howard*. *Marriage of Howard* specifically held that "the best interests of a child requirement . . . is insufficient" to withstand constitutional scrutiny in a grandparent visitation statute. 661 N.W.2d at 191.

The Ashenfelters attempt to compare their interest to that of the State in a child-in-need-of-assistance (CINA) action. We reject this comparison. The Ashenfelters's petition for grandparent visitation is not

a CINA action, and the Ashenfelters do not have the authority of the State to pursue a CINA case. We reach no conclusion regarding the ability of a court to order disclosure of medical or mental health records to the State in a CINA action. Here, the State conducted a CINA assessment based on allegations that included Amy's mental health status. The State recommended against juvenile court involvement. The State also did not recommend any services. Instead, the CINA assessment determined: (1) "there does not appear to be much of a base to the allegations made," (2) "Amy has many support systems," (3) "it appears that [Amy] has taken appropriate steps for [A.M.], and (4) Amy "has done better since separating herself from her family."

The Ashenfelters's desire for visitation cannot overcome Amy's constitutional and statutory privilege against production of her medical and mental health records in a petition for grandparent visitation.

## IV. Conclusion.

The district court abused its discretion in ordering Amy to produce her medical and mental health records to the Ashenfelters and to answer related interrogatories. Amy's records are protected by statute and by her constitutional right to privacy. The Ashenfelters's have not asserted a countervailing interest which would override Amy's constitutional right.

**DISTRICT COURT ORDER REVERSED.**