# IN THE SUPREME COURT OF IOWA

No. 14–0095

Filed April 3, 2015

**CAMERON FAGEN,**

Appellant,

vs.

Grand View University, NPI Security,

and

**ROSS IDDINGS,**

Appellee.

---

Appeal from the Iowa District Court for Polk County, Rebecca Goodgame Ebinger, Judge.

A party seeking damages for mental disability and mental pain and suffering appeals an order by the district court requiring him to sign a patient's waiver releasing his prior mental health records to the tortfeasor. **REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

Roxanne Conlin of Roxanne Conlin & Associates, P.C., Des Moines, for appellant.

Michael Carmoney and Allison J. Frederick of Carmoney Law Firm, PLLC, Des Moines, for appellee.

Paige Fiedler of Fiedler & Timmer, P.L.L.C., Urbandale, and Thomas J. Duff of Duff Law Firm, P.L.C., Des Moines, for amicus curiae Iowa Association for Justice.

Ryan G. Koopmans of Nyemaster Goode, P.C., Des Moines, for amici curiae Iowa Association of Business and Industry and the Iowa Defense Counsel Association.

**WIGGINS, Justice.**

An injured party brought a tort action claiming monetary damages for his injury. Part of his damage claim included damages for mental pain and mental disability. Based on this claim, the district court required the injured party to sign a patient's waiver, allowing the tortfeasor access to the injured party's mental health records without restriction. We now adopt a protocol balancing a patient's right to privacy in his or her mental health records against a tortfeasor's right to present evidence relevant to the injured party's damage claims. Accordingly, we reverse the order of the district court requiring the injured party to sign an unrestricted patient's waiver and remand the case for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

On April 12, 2012, Fagen was in his dormitory at Grand View University when he and other male students, including Iddings, entered the common area of his dormitory from an open doorway. Another student physically forced Fagen to the ground. The students then wrapped Fagen in a discarded carpet remnant that was in the common area. The students secured the carpet around Fagen with duct tape. While encased in the carpet, Fagen was unable to move his arms and legs. The students then picked Fagen up and set him upright in a corner. While propped up in the corner, the students tied a rope around the carpet, threw food and trash at Fagen, and kicked and punched him.

Then, the students lowered Fagen to the ground, rolled him to the other side of the room, and propped him up against the opposite corner. At that point, Fagen fell over. Unable to free his arms from the carpet, he hit the ground face first and shattered his jaw. An ambulance took Fagen to the emergency room of Mercy Hospital. Due to the severity of

his injuries, Mercy immediately arranged to transport him to the University of Iowa Hospitals and Clinics for treatment. Fagen underwent surgery at the University of Iowa hospital.

On August 29, Fagen filed a petition against six of the students involved in the assault as well as Grand View. Fagen amended his petition on March 3, 2013, adding Grand View's security company, NPI Security, as a defendant. Between May 2013 and the time of this appeal, Fagen dismissed five of the six individual defendants from this action. In his petition, Fagen asserts an assault and battery claim against Iddings. His claims against Grand View and NPI are for negligence and premises liability.

Fagen alleges in his petition that he has suffered severe and painful permanent injuries, and has endured and will continue to endure great physical and *mental pain*, physical and *mental disability*, and loss of enjoyment of life. He also alleges he has in the past and will in the future incur expenses for medical care, hospitalization, physical therapy, and medication for the treatment of said injuries. Fagen also alleges the assault caused a loss of time from his studies and a loss of earning capacity. He seeks monetary damages for his injuries.

In his deposition, Fagen disclosed he underwent treatment for anger management when he was in fourth through sixth grades. Iddings requested Fagen provide him with a release, waiving Fagen's privilege to his mental health records under Iowa Code section 622.10(3)(*a*) (2013), and allowing Iddings access to the mental health records pertaining to the treatment. Fagen refused. Iddings then filed a motion in district court to compel discovery of Fagen's mental health records.

Fagen filed a resistance to the motion, arguing the patient–physician privilege protected the mental health records from his early

childhood and the defendant's request for the records violated his constitutional right to privacy. He stated he had not received mental health treatment because of the assault, which is the subject of this case. Fagen argued in his resistance he is only claiming damages for what he called garden-variety pain and suffering and mental distress and not for a specific psychiatric or psychological condition. At the hearing, he told the court he did not intend to introduce any expert testimony regarding the emotional damages. He also stated he would only ask the jury for damages for garden-variety pain and suffering and mental distress, which he defined as the emotional suffering any normal person would have experienced if they had been the victim of an assault like the one he experienced.

Fagen also argued he had a constitutional right to privacy in those records that created an absolute patient–psychotherapist privilege. Fagen argued only a showing of necessity or compelling need could overcome the privilege, neither of which exists in Iddings's request.

The district court agreed with Iddings, finding Fagen waived his privilege to his mental health records by putting his mental well-being at issue in the case. The court also found Iddings's request did not violate Fagen's constitutional right to privacy. The district court ordered Fagen to sign an unrestricted patient's waiver for records within five days of the entry of the order.

Fagen did not execute the waiver, but rather filed an application for interlocutory appeal on this discovery issue. We granted the application.

## II. Issue.

In this appeal, we are required to decide if a tortfeasor in a civil case is entitled to a signed patient's waiver from the injured party to

obtain that party's mental health records when he or she alleges in the petition a claim for mental disability or mental distress.

### III. Scope of Review.

We typically review discovery disputes under an abuse of discretion standard. *See State v. Schuler*, 774 N.W.2d 294, 297 (Iowa 2009). However, because this case involves the statutory interpretation of Iowa Code section 622.10, we review for corrections of errors at law. *Ashenfelter v. Mulligan*, 792 N.W.2d 665, 668–69 (Iowa 2010). "Moreover, we have consistently interpreted this statute liberally to accomplish its goal of fostering candid communications between doctor and patient." *Chung v. Legacy Corp.*, 548 N.W.2d 147, 149 (Iowa 1996). We review the constitutional issue de novo. *State v. Reyes*, 744 N.W.2d 95, 99 (Iowa 2008).

### IV. Claims of the Parties.

We begin our analysis by examining the arguments urged by the parties in this appeal. Iddings contends once Fagen alleged the assault caused him to experience a mental disability and suffer mental pain and anguish, he became automatically entitled to a waiver to look at all of Fagen's mental health records, without limitation. Fagen argues that because he is only seeking damages for the mental pain and suffering that any normal person would have experienced because of the assault he experienced, and he is not calling as a witness a mental health professional to support his claim, Iddings is not entitled to obtain Fagen's mental health records. Both are urging an absolute rule. We disagree with both positions.

As to Iddings's contention, we agree there are times a plaintiff's mental health records are essential for a tortfeasor's defense against a claim. However, allowing a tortfeasor to obtain all the mental health

records of an injured party is not appropriate in all circumstances. For example, assume a tortfeasor injured a fifty-year-old person in a car collision and the injured person claims mental disability and mental pain and suffering in an action against the tortfeasor. Would the tortfeasor *automatically* be entitled to review the injured person's mental health records concerning counseling the injured party received as a child in connection with his parent's divorce forty years earlier? We think probably not.

Fagen's position that his mental health records are confidential and therefore absolutely privileged is also off the mark. Let us change the hypothetical facts assumed above. Now the tortfeasor seeks access to the fifty-year-old injured party's mental health records pertaining to counseling the injured party received for anxiety just six months prior to the collision. Even if the injured party is only seeking mental pain and suffering that any normal person would have experienced because of the collision and not calling a mental health professional to support his or her claim, we think it may be proper for the tortfeasor to obtain those records to present a proper defense.

Thus, it is important for us to strike a proper balance between Iddings's and Fagen's contentions. We can strike this balance by examining the constitutional and statutory parameters of the patient–physician privilege as it pertains to mental health providers and our rules of discovery.

### V. Constitutional Parameters of the Patient–Physician Privilege as it Pertains to Mental Health Providers.

In the context of a noncriminal case, we have discussed the patient–physician privilege as it pertains to mental health providers. *McMaster v. Iowa Bd. of Psychology Exam'rs*, 509 N.W.2d 754, 758–61

(Iowa 1993). *McMaster* discussed the privilege in the context of the board of psychology examiners subpoenaing a patient's records from a psychologist who was not under investigation. *Id.* at 755. The first thing we noted concerning the privilege was that under Iowa law patients have a constitutional right to privacy in their medical records, but the privilege is not absolute. *Id.* at 758–59. Rather, the privilege is qualified and to determine if the privilege attaches we use a balancing test. *Id.* at 759. "The privacy interest must always be weighed against such public interests as the societal need for information, and a *compelling need for information* may override the privacy interest." *Id.* (emphasis added) (internal quotation marks omitted).

In *McMaster,* we adopted a five-part protocol for determining whether a patient's constitutional privacy interest in his or her mental health records must yield to the competing interests of the board. *Id.* at 759–60. In a recent case, we summarized the *McMaster* protocol as follows:

> The protocol first required the party seeking access to the records must "make a minimal showing that the complaint reasonably justifies the issuance of a subpoena in furtherance of the investigation." Second, the party seeking access to the records must show the records are necessary as evidence in the disciplinary proceedings. This requirement can be satisfied by an *in camera* review of the records by the district court. Third, the party seeking access to the records must notify the patient and request a waiver from the patient prior to issuing the subpoena. Fourth, the party seeking access to the records should establish the existence of adequate safeguards to avoid unauthorized disclosure. Last, the patient's privacy interest in the records will yield to a competing interest of the State only if there is an articulated public policy, recognized public interest, or an express statutory mandate " 'militating toward access.' "

*State v. Cashen,* 789 N.W.2d 400, 406 (Iowa 2010) (citations omitted), *superseded by statute,* 2011 Iowa Acts ch. 8 § 2 (codified at Iowa Code

§ 622.10(4)), *as recognized in State v. Thompson*, 836 N.W.2d 470, 490 (Iowa 2013).

In a later case, we suggested this type of balancing test may not be appropriate in a civil case under federal law. *Ashenfelter*, 792 N.W.2d at 673. There, we decided we did not need to address whether a balancing test is appropriate in a civil case under Iowa law. *Id.* at 673 (concluding a parent's constitutional right to privacy in her mental health records shielded the records against discovery requests of grandparents seeking visitation).

**VI.    Iowa Code Section 622.10 and the Patient–Physician Privilege as it Pertains to Mental Health Providers.**

In Iowa, we do not recognize a common law patient–physician privilege. *Harder v. Anderson, Arnold, Dickey, Jensen, Gullickson & Sanger, L.L.P.*, 764 N.W.2d 534, 537 (Iowa 2009). However, the Iowa Code protects communications between a patient and a mental health professional. *See* Iowa Code § 622.10(1) ("A . . . mental health professional . . . who obtains information by reason of the person's employment . . . shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.").

The purpose of the patient–physician privilege is

> to promote free and full communication between a patient and his doctor so that the doctor will have the information necessary to competently diagnose and treat the patient[,] and . . . we construe the statute liberally to carry out its manifest purpose.

*State v. Heemstra*, 721 N.W.2d 549, 560–61 (Iowa 2006) (citation omitted) (internal quotation marks omitted). A "more liberal interpretation of section 622.10 is logical because the privilege would be virtually meaningless if it prohibited testimony but did not protect the very records upon which such testimony would be based." *Id.* at 560. Thus, we have extended the privilege under section 622.10 to requests for medical records during discovery. *See Ashenfelter*, 792 N.W.2d at 671–72.

The statute provides for a patient–litigant exception. Iowa Code § 622.10(2). It states:

> The prohibition does not apply to . . . mental health professionals . . . in a civil action in which the condition of the person in whose favor the prohibition is made is an element or factor of the claim or defense of the person or of any party claiming through or under the person. The evidence is admissible upon trial of the action only as it relates to the condition alleged.

*Id.* If the patient–litigant exception is applicable, Iowa law no longer protects as privileged the information to which the exception applies.

In the context of civil litigation, we have explained why the protection of a patient's mental health information is lost when the condition is an element or factor of a claim:

> [T]he existence of the exception will not inhibit communication between a patient and his doctor because the patient knows his statements will remain confidential unless he affirmatively and voluntarily chooses to reveal them by raising his condition as an element or factor of any claim or defense the patient makes.

*Chung*, 548 N.W.2d at 151 (emphasis omitted).

In *Jaffee v. Redmond*, the personal representative of an individual who was shot and killed by a police officer sought production of the officer's mental health records in litigation filed against the officer and

her employer. 518 U.S. 1, 4–5, 116 S. Ct. 1923, 1925–26, 135 L. Ed. 2d 337, 341–42 (1996). In that case, the plaintiff asserted no claim the officer had waived the patient–psychotherapist privilege, and the court therefore decided the narrow question of whether a federal common law privilege protected the defendant officer's mental health records. *See id.* at 4, 12–13, 116 S. Ct. at 1925, 1929–30, 135 L. Ed. 2d at 341, 346–47. The Supreme Court concluded the records were confidential and protected by an absolute federal common law privilege. *Id.* at 15, 116 S. Ct. at 1931, 135 L. Ed. 2d at 348. The Court in *Jaffee* explained that "[a] rule that authorizes the recognition of new privileges on a case-by-case basis makes it appropriate to define the details of new privileges in a like manner." *Id.* at 18, 116 S. Ct. at 1932, 135 L. Ed. 2d at 349. In other words, the Court suggested future decisions would likely further define the scope and waiver of the mental-health-records privilege. *See id.*

Iowa has deemed that when a person files a claim he or she waives any privilege under section 622.10 in mental health records when the "condition of the person in whose favor the prohibition is made is an element or factor of the claim or defense of the person." Iowa Code § 622.10(2). This waiver occurs regardless of whether the constitution or statute created the privilege. However, Iowa Code section 622.10 does not waive the privilege to all mental health records. The statute recognizes two competing interests when dealing with medical records: a patient's right to privacy in his or her mental health records, which promotes free and open communication between the psychotherapist and patient, and the need of a defendant to present a full and fair defense to the plaintiff's claims. "We do not lightly require disclosure of mental health information." *In re A.M.,* 856 N.W.2d 365, 377–78 (Iowa 2014).

In balancing these two competing interests, section 622.10 protects a person's privacy interest in confidential communications made to certain professionals, but provides for a waiver of the person's privacy interest under certain prescribed circumstances. One of these circumstances occurs in civil litigation in which persons assert claims making the person's "condition . . . an element or factor of the claim or defense of the person or of any party claiming through or under [them]." Iowa Code § 622.10(2). Notably, the legislature did not mandate in this context a waiver of a person's privacy interest in records unrelated to the condition that is an element or factor of the claim or defense of the person. The last sentence of section 622.10(2) clearly limits the admissibility of the waived record only if "it relates to the condition alleged" by the person whose privacy interest in confidential communications is protected. *Id.*; *see also Chung*, 548 N.W.2d at 149.

**VII. Iowa Rule of Civil Procedure 1.503 and the Scope of Discovery.**

"The statutory rule of testimonial exclusion has been extended by rule to the discovery of confidential communications." *Chung*, 548 N.W.2d at 149. Rule 1.503(1) allows discovery of all nonprivileged documents relevant to the subject matter of the litigation. Iowa R. Civ. P. 1.503(1). Section 622.10 sets up the means for the plaintiff to produce those nonprivileged records.[1] In situations involving records that are not

---

[1]The legislature added the language requiring a plaintiff to provide a patient's waiver in 1997. 1997 Iowa Acts ch. 197, § 8(3). The preamble to chapter 197 included the phrase "procedures for furnishing patient records of plaintiffs." *Id.* ch. 197, preamble. The bill's explanation provided:

> Code section 622.10 is amended to provide a procedure for the furnishing of a plaintiff's patient records by a physician or surgeon, physician assistant, or mental health professional to an adverse party in a civil action in which the condition of the plaintiff is an element or factor

mental health records, the party asserting the privilege has the burden of showing a privilege exists and applies. *Hutchinson v. Smith Labs., Inc.*, 392 N.W.2d 139, 141 (Iowa 1986).

Requests for discovery must be "reasonably calculated to lead to the discovery of admissible evidence." Iowa R. Civ. P. 1.503(1). In other words, relevancy to the subject matter of a lawsuit is broader than relevancy to an issue specifically pled, because the rule permits a party to discover inadmissible information as long as the request is reasonably calculated to lead to the discovery of admissible evidence. *Mediacom Iowa, L.L.C. v. Inc. City of Spencer*, 682 N.W.2d 62, 66 (Iowa 2004).

Thus, rule 1.503(1) and section 622.10(2) operate in tandem. Both the rule and the statute allow for discovery of records that may lead to admissible material because the condition of the person in whose favor the prohibition is made is an element or factor of the claim or defense of the person. The rule and the statute must work in tandem because the rule prohibits discovery of privileged information, and the statute prescribes the limited circumstances in which the privilege in medical records is waived. Neither the rule nor the statute allows carte blanche access to a person's medical records. A person's mental health records are discoverable under rule 1.503 if they are not privileged. *See* Iowa R. Civ. P. 1.503(1). A person's mental health records are privileged in a civil action unless the person's condition is an element or factor of the claim of the person or of any party claiming through the person, or an element

---

of the claim or is a defense of the adverse party or of any party claiming through or under the adverse party, if the record relates to the condition alleged.

H.F. 693, 77th G.A., 1st Sess., explanation (Iowa 1997).

of the claim or defense of an adverse party or of any party claiming through or under the adverse party. *See* Iowa Code § 622.10(2)–(3).

**VIII.  Analysis.**

The legislature has facilitated the process for accessing a party's nonprivileged medical records, including mental health records, by requiring a party to provide a patient's waiver to the requesting party under Iowa Code section 622.10. To decide when and how a party will be required to provide a waiver to allow another party in a civil case to access mental health records, we must construe section 622.10.

In construing a statute, our goal is to determine legislative intent. *See Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). To do this, we look at the words the legislature used, not the words the legislature should have used. *Id.* When the legislature fails to define words in a statute, we examine the context in which the words appear and give them their ordinary and common meanings. *Id.* We cannot "extend, enlarge, or otherwise change the meaning of a statute" under the guise of construction. *Id.*

The language of section 622.10 is clear and unambiguous. The legislature has determined the patient–physician privilege is not absolute in the context of civil litigation. When a person files a lawsuit, that person waives his or her privilege in mental health records in which the condition of the person in whose favor the prohibition is made is an element or factor of the claim. Iowa Code § 622.10(2). By filing a lawsuit, a party does not give up his or her right to contest the discoverability of his or her mental health records. Our job is to decide how a court determines when, in civil litigation, a party waives his or her privilege in a certain medical record under section 622.10(2) and the record becomes discoverable under rule 1.503.

We start the discussion by noting that in most actions the parties are able to determine when a party waives his or her privilege in a medical record under section 622.10(2). The parties will only ask the court to decide this dispute in those rare cases where the parties cannot resolve it themselves.

This case presents one of those situations in which the parties have been unable to resolve their dispute. It is no different from other discovery disputes that our courts deal with on a regular basis. Although Fagen's pleading may be imprecise in describing the nature and extent of the damages he seeks in alleging mental disability, and although he has not precisely characterized in his discovery responses the types of damages he seeks, he has objected to Iddings's request for a patient's waiver on the ground the records sought do not relate to the condition for which damages are claimed in this case or to any defense that might be asserted. Fagen has a right to raise this objection. Once raised, the court must examine the record and the arguments of counsel to decide this dispute.

We think using some of the protocols of *McMasters* will inform the district court's approach in identifying which mental health records of a person must be produced under rule 1.503 as a consequence of waiver resulting from the person's filing of a civil lawsuit. These protocols will enable the court to determine when the record *relates to the condition alleged by a party.* As we have already noted, a person does not waive the privilege in all of his mental health records by merely filing a civil action.

When a party refuses upon request to provide a patient's waiver under section 622.10, the court must make sure the party seeking the waiver is not permitted to go on an unlimited fishing expedition into a

party's mental health records. Therefore, the person requesting the waiver must make a showing that he or she has a reasonable basis to believe the specific records are likely to contain information relevant to an element or factor of the claim or defense of the person or of any party claiming through or under the privilege. In doing so, the person seeking the patient's waiver need not establish the records sought actually contain admissible evidence concerning an element or factor of the claim or defense. The person seeking the patient's waiver need only advance some good-faith factual basis demonstrating how the records are reasonably calculated to lead to admissible evidence germane to an element or factor of the claim or defense. An important requirement of this showing is the person seeking the patient's waiver must show a nexus between the records sought and a specific claim or defense made in the case. If a party can make this showing, the patient–physician privilege is lost as to those records and the party requesting the waiver shall be entitled to the waiver to obtain those records within the scope of discovery.

If the court requires a party to sign and deliver a patient's waiver, the party seeking the records must keep confidential the records obtained with the waiver. *See McMaster*, 509 N.W.2d at 759–60. The patient's waiver authorizes access only to records meeting the requirements of the protocol. If a party needs to disseminate the records to a third party to prepare for trial, the court should allow such dissemination with the appropriate safeguards. Finally, the records are not admissible as evidence unless the party can show the records are necessary as evidence in the proceeding. *See id.*

**IX.  Application of Protocol to the Facts of This Case.**

In this appeal, Fagen objects to providing the waiver because he claims he is only seeking damages for mental pain and suffering that any normal person would have experienced because of the assault and is not calling a mental health professional to support his claim.  Assuming this to be true, Iddings must have a reasonable basis to believe the records are likely to contain information concerning the mental pain and suffering Fagen is claiming.  Before the court can require Fagen to sign a waiver for the anger-management counseling records Iddings seeks, Iddings must advance some good-faith factual basis demonstrating how the records are reasonably calculated to lead to admissible evidence germane to mental pain and suffering that any normal person would have experienced because of the assault alleged by Fagen.

Based on the record on appeal, we are unable to apply this protocol to the facts of this case.  First, Fagen's petition alleges more than mere mental pain and suffering.  It alleges Fagen suffered a mental disability.  A mental disability connotes an incapacity to perform certain mental functions.  However, at the hearing on this matter before the district court, Fagen said he was not seeking damages for a mental disability, but rather damages for garden-variety pain and suffering and mental distress.

Second, the record on appeal does not include discovery documents identifying the mental injury damages Fagen is seeking.  The briefs and pleadings indicate he is only claiming damages for garden-variety pain and suffering and mental distress, which he defines as the emotional suffering any normal person would have experienced because of the assault he endured, and not as a specific psychiatric or

psychological condition. He also claims in his brief and pleadings that he does not intend to introduce expert witnesses to support this claim.

However, the record on appeal does not include discovery documents limiting his claim to a garden-variety mental distress claim. Additionally, the record does not include any discovery responses stating the extent or nature of his mental distress claim. Furthermore, the record does not include medical records regarding his physical injuries to gain further insight into his damage claims in this case.

Third, the record does not include the portions of Fagen's deposition revealing the nature of any anger-management counseling he received. We do not know who performed the counseling, the time the counseling took place, and the circumstances that caused the counseling.

Finally, Iddings asserts he should get all of Fagen's mental health records. Iddings has not shown how all of these records are relevant to Fagen's specific claim for mental distress. Accordingly, on our review of the record, Iddings's request for these specific records is too general in light of the protocols we announce in this opinion.

Iddings contends he needs Fagen's mental health records to establish a baseline of Fagen's mental condition prior to the assault. He fails, however, to show a good-faith factual basis demonstrating how the records are reasonably calculated to lead to admissible evidence germane to Fagen's claim. Iddings presents no facts that Fagen's mental health immediately prior to the assault was anything but normal. He presents no facts as to how counseling sessions from grade school are reasonably calculated to lead to admissible evidence regarding a baseline.

Consequently, we are unable to determine from the record before us and the arguments made by the parties whether Iddings is entitled to

a waiver releasing the specific records he seeks. Thus, we reverse the order requiring Fagen to sign the requested patient's waiver and remand the case to the district court to allow the parties to present the appropriate evidence called for by this protocol and to apply the protocol before deciding if Fagen should sign a patient's waiver.

## X. Disposition.

We reverse the district court's order requiring Fagen to sign a patient's waiver for his mental health records concerning his anger-management counseling and remand this case to the district court to follow the protocol contained in this opinion pertaining to the release of a party's mental health records in a civil action.

**REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except Zager, J., who concurs in result only, and Mansfield, J., Cady, C.J., and Waterman, J., who dissent.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. A good deal of the plurality's reasoning makes sense to me. However, I am concerned we are disregarding the question we are supposed to answer, and instead, answering a question nobody asked us to answer.

**I. The Garden-Variety Exception.**

This appeal is not about specific mental health records. The question Fagen has raised on appeal is whether a defendant can obtain *any* of the plaintiff's mental health records when the plaintiff seeks only garden-variety emotional distress damages. I would reject Fagen's appeal for three reasons.

First, Fagen is alleging "mental disability," which would not qualify as garden-variety emotional distress under any plausible definition of that term. Second, I do not believe the underlying statute—Iowa Code section 622.10 (2013)—allows for a garden-variety exception. Third, while I see the policy arguments for a garden-variety exception in the employment litigation field, I am concerned that in the personal injury context, a garden-variety exception could be used to give plaintiffs two bites at the same apple. Since personal injury plaintiffs can already recover pain and suffering damages, why should they get a second verdict line covering "the normal feelings of anguish, grief, distress, fear, and pain and suffering that any reasonable person would feel . . . incident to the physical injuries he suffered"? That sounds duplicative to me. For any of these reasons, I would affirm the judgment below.

Let me elaborate on these three points. To begin with, it is undisputed that Fagen has alleged he suffered a mental disability at the hands of the defendants. At the beginning of oral argument in this court,

Fagen's counsel reaffirmed that allegation, stating, "We pled . . . that the plaintiff has endured and will endure great physical and mental pain, physical and mental disability, and loss of enjoyment of life." A mental disability is not garden-variety emotional distress.

Normally, the availability of discovery is determined by the parties' allegations. When a plaintiff has alleged mental disability, opposing parties and the district court should be able to take that allegation at face value.

In addition, even if a plaintiff were alleging only a more routine form of mental injury, we have a controlling statute. Section 622.10(2) provides that the patient–psychotherapist privilege

> does not apply . . . in a civil action in which the condition of the person in whose favor the prohibition is made is an element or factor of the claim or defense of the person or of any party claiming through or under the person.

Iowa Code § 622.10(2). Here, the mental health condition of the plaintiff is an element or factor in the plaintiff's claim. In his petition, the plaintiff alleges, among other things, that he "has endured and will continue to endure . . . mental pain . . . and mental disability." Therefore, under section 622.10(2), the privilege does not apply. The statute is not ambiguous, and it should resolve the present case, in my view.

Furthermore, section 622.10(3)(*a*) provides:

> In a civil action in which the condition of the plaintiff in whose favor the prohibition is made is an element or factor of the claim or defense of the adverse party or of any party claiming through or under the adverse party, the adverse party shall make a written request for records relating to the condition alleged upon the plaintiff's attorney . . . . Upon receipt of a written request, the plaintiff shall execute a legally sufficient patient's waiver and release it to the adverse party . . . .

*Id.* § 622.10(3)(*a*). Note again the mandatory wording—"shall execute."
*Id.* I do not see anything in sections 622.10(2) or 622.10(3) that supports a garden-variety exception.

Also on point is a rule of civil procedure we have just adopted. Rule 1.500(1)(*b*) provides:

> [A]ny party asserting a claim for damages for personal or emotional injuries must, without awaiting a discovery request, provide to the other parties:
>
> . . . .
>
> (3) The names and addresses of all doctors, hospitals, clinics, pharmacies, and other health care providers claimant consulted within five years prior to the date of injury up to the present date.
>
> (4) Legally sufficient written waivers allowing the opposing party to obtain those records subject to appropriate protective provisions authorized by rule 1.504. The opposing party must give contemporaneous notice to the claimant when the opposing party uses the waivers to obtain records and must provide a copy of all records obtained by waiver to the claimant and all other parties. Any party who requests that the opposing party produce these records in nonelectronic form must bear the opposing party's costs of producing them in that form.

Iowa R. Civ. P. 1.500(1)(*b*). Like Iowa Code section 622.10, our initial disclosure rule does not support a garden-variety exception. Rather, whenever the plaintiff alleges emotional injury, she or he must provide waivers at the commencement of litigation so the defendant may obtain the preceding five years of mental health records.[2]

Lastly, even if Iowa Code section 622.10 (and Iowa Rule of Civil Procedure 1.500) were not an obstacle to recognizing a garden-variety exception to permitted discovery on mental health, I do not see any need

---

[2]However, it should be noted that under this rule the defendant would not be entitled to disclosure of Fagen's anger-management counseling records from fourth through sixth grade because of the time that has elapsed.

for such an exception in personal injury cases. In effect, the plaintiff here seeks to carve out an exception to sections 622.10(2) and 622.10(3) for garden-variety emotional distress. What the plaintiff means by "garden variety" is somewhat elusive to me. The plaintiff offered several definitions in his briefs and continued to shift among those definitions during oral argument before this court. Yet his predominant definition appears to be that emotional distress is garden variety when the plaintiff is claiming for "the normal feelings of anguish, grief, distress, fear, and pain and suffering that any reasonable person would feel . . . incident to the physical injuries he suffered."

To me, this form of garden-variety emotional distress sounds a lot like generic "pain and suffering." "The element of pain and suffering includes bodily discomfort, mental suffering, loss of enjoyment of life, and other emotional distress." *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 163 (Iowa 2004); *see also Miller v. Rohling*, 720 N.W.2d 562, 570 (Iowa 2006); *Estate of Pearson ex rel. Latta v. Interstate Power & Light Co.*, 700 N.W.2d 333, 346–47 (Iowa 2005). When a plaintiff is simply claiming undifferentiated pain and suffering damages as part of a physical injury claim, I would be inclined to agree that his or her mental health records are not subject to discovery because the plaintiff's condition is not an element of his or her claim.

What then is the problem in this case? The problem is that the plaintiff wants emotional distress damages in addition to traditional pain and suffering—in other words, the plaintiff wants a separate line for each item on the verdict form. If that is so, two possibilities exist. One is that the plaintiff seeks a double recovery, which should not be allowed. The other is that the plaintiff intends to recover for mental health injuries different from and more extensive than the typical "anguish, grief,

distress, fear, and pain and suffering . . . incident to the physical injuries he suffered." In that case, the plaintiff has put his mental health condition at issue and Iowa Code sections 622.10(2) and 622.10(3) apply.

For all these reasons, the whole notion of garden-variety emotional distress claims in a personal injury case seems to be a solution in search of a problem. The plaintiff already can recover what most would regard as garden-variety damages without exposing his or her mental health records to discovery—simply by asking only for general pain and suffering damages.

It is worth noting, though, where the garden-variety concept originated. As the plaintiff points out in his briefing, it comes from and most often appears in the employment discrimination field. The first case apparently to use this term is *Sabree v. United Brotherhood of Carpenters & Joiners of America, Local No. 33*, 126 F.R.D. 422, 426 (D. Mass. 1989). The court there denied discovery of an employment discrimination plaintiff's psychotherapy records, on the ground that he "makes a 'garden-variety' claim of emotional distress, not a claim of psychic injury or psychiatric disorder resulting from the alleged discrimination." *Id.* Since then, the garden-variety exception to discovery of mental health records has become more popular in civil rights litigation. *See* Helen A. Anderson, *The Psychotherapist Privilege: Privacy and "Garden Variety" Emotional Distress*, 21 Geo. Mason L. Rev. 117, 118, 125–26 (2013) (noting that the approach has been "gaining ground" and that the issue arises in federal court "most often in civil rights suits"). To my knowledge, the vast majority of garden-variety cases are civil rights cases.

Here the analysis gets a little more complicated for me. We do not have a routine line item for pain and suffering in discrimination cases. Is

it unreasonable to allow victims of discrimination—like victims of physical injuries—to recover for a certain modicum of pain and suffering caused by the incident without putting their mental health condition at issue? Does the law permit this? Should the law in effect presume that all acts of unlawful discrimination cause some degree of mental anguish? These are legitimate questions. However, they are issues for another day. My present point is simply that in personal injury cases, a garden-variety exception is either unneeded or, to the extent it serves any purpose, contradicted by the statute. That is enough to decide today's case for me.

## II. The Plurality's Protocol.

Let me now turn to the issue the plurality has addressed, specifically its decision to engraft a protocol from constitutional privacy cases. *See McMaster v. Iowa Bd. of Psychology Exam'rs*, 509 N.W.2d 754, 758–60 (Iowa 1993); *see also Ashenfelter v. Mulligan*, 792 N.W.2d 665, 672–73 (Iowa 2010); *State v. Cashen*, 789 N.W.2d 400, 406 (Iowa 2010), *superseded by statute*, 2011 Iowa Acts ch. 8, § 2 (codified at Iowa Code § 622.10(4)), *as recognized in State v. Thompson*, 836 N.W.2d 470, 490 (Iowa 2013). Importantly, all of those cases involved an involuntary participant in a legal proceeding who was being asked to produce mental health records so a party to the proceeding could prove that party's claim or defense. *See McMaster*, 509 N.W.2d at 756; *see also Ashenfelter*, 792 N.W.2d at 667–68; *Cashen*, 789 N.W.2d at 404.

That scenario raises a serious constitutional issue. A crime victim who finds herself being compelled by the machinery of the state to give up her private mental health records can legitimately ask, "What about my privacy?" But someone like the plaintiff here who is seeking to *use* the machinery of the state to recover money from another person for

mental health injuries stands in a much different position, constitutionally speaking.[3]

My basic quibble with the plurality's protocol is that even when the plaintiff has alleged mental injury, it places the burden on the defendant who wants specific mental health records to provide a "good-faith factual basis demonstrating how the records are reasonably calculated to lead to admissible evidence." Hence, the plurality criticizes the defendant because he "presents no facts." All the plaintiff has to do is refuse to execute a waiver, and the defendant has to go to court and make this factual showing. Thus, in practical effect, the plurality requires the defendant to conduct other discovery before getting access to mental health records. This is illustrated in the present case, where the court remands for the district court to look at "discovery documents identifying the mental injury damages Fagen is seeking," "discovery responses stating the extent or nature of his mental distress claim," "medical records regarding his physical injuries to gain further insight," and "Fagen's deposition."

I believe Iowa Code sections 622.10(2) and 622.10(3) and Iowa Rule of Civil Procedure 1.500(1)(*b*) place the burden on the other side. Section 622.10(3)(*a*) authorizes access to records based on the "condition alleged." Iowa Code § 622.10(3)(*a*). Rule 1.500(1)(*b*) requires disclosure of records when the plaintiff is "asserting a claim for . . . emotional

---

[3]*See* Stefanie J. Thomas, Note, *Weeding the Garden: Finding a Solution to "Garden Variety" Emotional Distress Claims and Discovery Issues*, 62 Drake L. Rev. 599, 615 (2014) ("It is analogous to assume that when a plaintiff waives the statutory physician-patient privilege under Iowa Code section 622.10, the plaintiff also waives the constitutional right to privacy. When confronted with this argument, federal courts have held that the constitutional right to privacy is waived when a plaintiff alleges emotional distress.").

injuries." Iowa R. Civ. P. 1.500(1)(*b*). Allegations drive the process. Thus, presumptively, when a plaintiff alleges he or she has suffered a mental injury, his or her *mental condition* is an element or a factor in *the plaintiff's claim or defendant's defense*, *see* Iowa Code § 622.10(2), (3)(*a*), and she or he should produce the last five years of mental health records to the defendant subject to the procedural protections in the rule, *see* Iowa Rs. Civ. P. 1.500(1)(*b*)(3), (4). True, a plaintiff should have an opportunity to demonstrate that particular records are not subject to discovery because they are not reasonably calculated to lead to the discovery of admissible evidence and in that sense do not "relat[e] to" the defendant's defense.[4] However, the burden should be on the plaintiff. After all, the plaintiff already knows or can readily determine what is in those records.

By adopting a protocol that nobody asked for, I fear the plurality is being helpful to neither trial judges, plaintiffs, nor defendants. I do not detect a groundswell of opinion that Iowa judges are not managing discovery disputes appropriately or need more protocols to assist them.[5] The plaintiff here asked for a blanket exception, not a new procedural protocol.

---

[4]Our prior caselaw has given the phrase "relating to" broad meaning. *See, e.g.*, *Baker v. City of Ottumwa*, 560 N.W.2d 578, 582 (Iowa 1997) (calling an exemption to governmental tort liability for a "claim relating to a swimming pool" a "broad classification" and therefore determining it exempted suits involving negligent lifeguards as well as cases pertaining to pool health standards (internal quotation marks omitted)); *see also Dubuque Casino Belle, Inc. v. Bair*, 562 N.W.2d 605, 607 (Iowa 1997) (agreeing with the plaintiff that " 'relating to' is a phrase to be given broad meaning" but noting that its broad scope can be limited where the legislature chooses to provide narrower statutory definitions).

[5]In fact, the plurality says that the present matter "is no different from other discovery disputes that our courts deal with on a regular basis." This confirms, in my view, the absence of need for a new protocol.

Notably, the plurality's protocol would apply in *any* case where the plaintiff seeks recovery of damages for emotional distress or mental injury, whether garden variety or not. It may foster time-consuming discovery disputes. It may force a defendant to spend time on extra depositions trying to find indirect evidence of the plaintiff's mental health condition (say through questioning of the plaintiff's acquaintances) in order to support a request for the plaintiff's mental health records. In some cases, this discovery may be more intrusive and embarrassing than production of the records would have been. It may cause trial dates to be postponed because the district court will be unable to rule on whether mental health records should be produced until fact discovery is largely complete—i.e., on the eve of trial. The plurality seems to foreswear the traditional, logical approach (embodied in Iowa Code section 622.10 and recently reinforced by Iowa Rule of Civil Procedure 1.500(1)(*b*)) that a defendant can conduct discovery based on what the plaintiff alleges, subject to the plaintiff's ability to make specific, supported objections.

For the foregoing reasons, I respectfully dissent.

Cady, C.J., and Waterman, J., join this dissent.